## Bascom et al., Appellants, *v.* Cannon.

*Mining—Openings—Contract—Equitable ejectment—Estoppel.*

A vendor of coal agreed to give to the vendee " the privilege to enter the land and open for coal at any place he may see fit, at fifty dollars per acre." The vendee went upon the premises, and drilled and searched for coal all over the farm, and located and opened slopes. Subsequently, a disagreement arising between the parties, an equitable ejectment was brought by the vendor which resulted in a conditional verdict, which was to be released on payment to the vendor of a certain sum of money, he making to the vendee a good title " agreeably to the articles of bargain and sale," and also for twelve acres of land " to be surveyed so as to include all the slopes, openings and sinks in the occupancy of the defendant," and also for the undivided half of certain other twelve acres. A deed was made in accordance with the terms of the verdict, and the sum of money named in the verdict was paid into court. No mining was thereafter done or attempted on the land outside of the twenty-four acres until a period of thirty-seven years after the ejectment. *Held,* that the acceptance by the parties of the verdict and deed was a final settlement between them, and that thereafter all the vendee's rights and privileges under the agreement ceased, and he could open no mines outside of the twenty-four acres.

*Right of access to underlying coal—Implication.*

Where parties have agreed upon the mode of access to coal conveyed no implication can be allowed of any other way, however convenient.

Argued Oct. 12, 1893. Appeal, No. 238, Oct. T., 1893, by plaintiffs, Frank A. Bascom et al., from decree of C. P. Mercer

Co., June T., 1888, No. 3, dismissing bill in equity against defendant, Samuel Cannon.  Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Bill to enjoin defendant from interfering with plaintiff in entering upon lands to search and mine for coal.

The case was referred to J. C. Miller, Esq., as master, who recommended that the bill be dismissed, on the ground that plaintiff's right was not sufficiently clear, citing: Coal Co. v. Snowden, 42 Pa. 488; Messimer's Ap., 92 Pa. 168; Duncan v. Iron Works, 136 Pa. 478.

The facts appear by the opinion of the Supreme Court.

Exceptions to the master's report were dismissed in the following opinion, by MEHARD, P. J.:

" The plaintiffs claim to own what coal underlies a certain tract of land, whereof the surface belongs to the defendant. The injury of which they complain is, that defendant prevents them from entering upon his land and digging through the surface at such places as they see fit in searching for a vein or for ' pockets ' of merchantable stone coal, and mining the same, in the event of finding it.   The remedy prayed for is an injunction to restrain the defendant from preventing the plaintiffs, their agents, workmen or employees, from entering upon his said land for the purpose of searching for and mining and removing such coal.

" The learned master, after a careful examination of the whole case, concludes that plaintiffs' right to enter upon defendant's land and search for and mine coal was not so clear as to bring this case within the jurisdiction of a court of equity. The correctness of that conclusion is the first question for consideration.

" The plaintiffs claim to derive title to the undivided one half of the coal underlying defendant's land through a deed from defendant, granting the same to one Ralph Clapp, bearing date March 8, 1842, and called ' Exhibit A ' in plaintiffs' bill.  But the plaintiffs could not base the right contended for in this case on that instrument, for it is therein stipulated that the grantee shall not dig on the surface of any of the lands of the grantor, but shall enter and mine for coal from a certain twelve-acre tract not embraced in this controversy.

" The plaintiffs claim to derive title to the other one half of the coal underlying defendant's land through certain articles of agreement executed on March 5, 1844, between the defendant of the one part and one Samuel Henderson of the other part, as set forth in ' Exhibit B ' of plaintiffs' bill.   That is an agreement by defendant to convey to said Henderson in fee simple the undivided one half part of the mineral and stone coal on the land mentioned and described in plaintiffs' bill.   And therein the defendant agreed to give to said Henderson ' the privilege to enter the land and open for coal at any place he may see fit at fifty dollars per acre ; not to interfere with any of the buildings, spring or garden of said Cannon.'

" It seems to be an undisputed fact that Henderson, under said agreement, entered upon said land and opened a mine for coal.   It is contended, however, on the part of plaintiffs, that the true construction of that agreement is that Henderson and his assigns were to have the right to enter upon said land as often as they might see fit, without limit as to time, and to dig in as many places, and to make as many openings for coal as they might see fit, and that their obligation to pay fifty dollars an acre would arise only upon their locating an opening.

" The whole of that contention is involved in plaintiffs' right to maintain this suit.   But that such is the true construction of that instrument is by no means clear.   Where the article reads that Henderson was to have the right to enter the land and open for coal at any place he might see fit, did it give him a right to open at as many places as he might see fit ?   [While Henderson thereby acquired an option to take as much land as he might wish for the purpose of his entry and opening, did he acquire a right to exercise that option as often as he might choose to do so?] [2]   [While he doubtless had a reasonable time in which to exercise his option, could he or his assigns neglect to do so for over forty years and then exercise it?] [3]   While the article of agreement gave Henderson a right to enter on said land and open for coal at fifty dollars per acre, did it give him a right to dig over the surface without paying anything?   Unless these questions can be clearly answered in favor of the plaintiffs, equity should not assume jurisdiction of this case so far as it rests on the instrument marked ' Exhibit B.'   In our opinion that would be a very doubtful construction of those articles of agreement.

" But it appears that defendant brought an action of eject-ment in this court in 1848, against said Henderson and others, to recover possession of the coal so agreed to be conveyed by said articles of agreement, and on December 27, 1849, obtained a verdict ' to be released on defendant paying to plaintiff the sum of sixteen hundred and fifty-seven dollars and seventeen cents, with interest and costs of suit, in nine months, plaintiff making to defendant a good title, agreeably to the articles of bargain and sale between the plaintiff and Samuel Henderson, for the undivided half part of the mineral and stone coal on the 193 acres of land, more or less, described in said agreement; also, for the twelve acres of land to be surveyed so as to include all the slopes, openings and sinks in the occupancy of the de-fendant; and, also, for the undivided half of the twelve acres described in Mr. Gillespie's draft marked " twelve acres " and letter " A," and depositing the same with the prothonotary before taking the money out of court.' In the year A. D. 1850 the money was paid by defendants in that suit, and a deed was filed by Mr. Cannon.

" The parties to that suit, and those claiming under them, seem to have held possession and in all ways to have conducted themselves in accordance with the adjustment of the boundaries of their lands as set forth in that verdict, up until in 1887, when the plaintiffs entered upon lands of the defendant included within the boundaries of the 193 acres therein mentioned, but not included within the boundaries of either of the twelve-acre parts which the defendant here was directed by that verdict to include within the conveyance to the defendants in that suit.

" That entry was resisted by the defendant and the plaintiffs were compelled to yield up their occupancy of that land. [There is certainly much force in the position that the rights of the parties and privies to the contract (Exhibit B) were determined by the action referred to. The conduct of the parties for thirty-seven years seems to have been a recognition that their rights were limited by the terms of the verdict in that suit, and that the defendants therein had no right of possession or occupancy beyond the boundaries of the twelve-acre tracts.] [4] In view then of the verdict, of the subsequent conduct of the parties, and of the lapse of time, it cannot be said that the plaintiffs have such a clear right to enter upon, or for any purpose to oc-

cupy, the surface of the 193 acres not included in either of the twelve-acre tracts as would give jurisdiction in this case to a court of equity.

" It was ably contended, at the argument of this case, that, inasmuch as the defendant granted the coal under the one hundred and ninety-three acres of land, he granted by implication, as a necessary incident or appurtenant thereto, the right to his grantee and his assigns to enter upon the surface of the land, and to drill or dig or in any other proper way to search for a vein or for pockets of coal under the surface, and likewise the right to make openings for mining the same. A forcible answer to this proposition is that the parties to the instruments under which plaintiffs claim (Exhibits A and B in the bill) did not leave that matter to rest upon a legal presumption, but in each instrument the rights of the parties in that respect were defined.

" It is argued that the proposition contended for is sustained by the principle which gives a right of way of necessity to the grantee of a piece of land surrounded by other lands of the grantor. The cases are materially different in at least two particulars: (1) The proposition contended for includes a right to drill through and dig over the surface of the land in order to ascertain whether there is any merchantable coal under it; and (2) because it is not obviously necessary to the mining of a vein of coal, that it must be reached by an opening made on the land under which it lies. When it is borne in mind that the owner of the coal must so mine it as to do no injury to the surface beyond the privileges granted (Carlin & Co. v. Chappel, 101 Pa. 348), it is most improbable that the law would append to a grant of the underlying coal a right to dig over and in part to destroy the surface, in order to ascertain whether there be any coal under it. In Harris v. Ryding, 5 M. & W. 60, Lord ABINGER, C. B., says, that, if the owner had granted the surface, reserving the mines merely, he would have had no access through the surface, but must have reached them through other adits. And when he reserved the right of access, he did not thereby reserve the right to dig, so as to destroy the surface, or to do anything in a manner unusual or improper, so as to prejudice the surface of the land: Washburn's Easements & Serv. *476. It thus appears that the right on which plaintiffs' prayer for relief rests is not clear, but, on the contrary, is clouded with grave doubts.

" It is unnecessary to add to the authorities cited by the learned master in support of the proposition that, where such right is doubtful, equity will not take jurisdiction. The case relied on by the learned counsel for plaintiffs to show that equity has jurisdiction in this case (Westmoreland N. Gas Co. v. DeWitt et al., 130 Pa. 235) is not in conflict with that proposition. Equity took jurisdiction in that case because the rights of the parties were clear.

" It is now considered, ordered, adjudged and decreed that plaintiffs' bill be dismissed and that plaintiffs pay the costs of this suit."

*Errors assigned* were to portions of opinion in brackets and to the decree quoting them.

*W. H. Cochran*, for appellants, cited: Cluggage v. Duncan, 1 S. & R. 110; Bell v. Hartley, 4 W. & S. 32; Porter v. McGinnis, 1 Pa. 413; Armstrong v. Caldwell, 53 Pa. 284; Caldwell v. Copeland, 37 Pa. 431; Taylor v. Dougherty, 1 W. & S. 326; Kingston v. Lesley, 10 S. & R. 383; Klock v. Hudson, 3 Johns. 375; Hastings v. Wagner, 7 W. & S. 215; 2 Washburn, Real Property, 621; Worthington v. Hylyer, 4 Mass. 205; Butz v. Ihrie, 1 Rawle, 218; Nitzell v. Paschell, 3 Rawle, 76; Lindeman v. Lindsey, 69 Pa. 93; Doe v. Butler, 3 Wend. 149; Arnold v. Stevens, 24 Pick. 106; Close v. Zell, 141 Pa. 390; McGowen v. Bailey, 146 Pa. 572; Leford's Case, 11 Rep. 52; Broom's Maxims, 362; Carlin & Co. v. Chappel, 101 Pa. 348; Harris v. Ryding, 5 M. & W. 60; Westmoreland Gas Co. v. DeWitt, 130 Pa. 249; North Pa. Coal Co. v. Snowden, 42 Pa. 488; Messimer's Ap., 92 Pa. 168; Duncan v. Hollidaysburg & Gap Iron Works, 136 Pa. 478; Slegel v. Lauer, 148 Pa. 237; Grubb's Ap., 90 Pa. 228.

*Samuel Griffith*, for appellee, filed no paper-book.

OPINION BY MR. JUSTICE MITCHELL, November 6, 1893 :

The subject of controversy is correctly stated by the learned master as " the right of the plaintiffs to enter on the land of defendant, and open for coal at any place they may see fit at fifty dollars per acre."

As to the half of the coal conveyed by Cannon to Clapp in 1842, waiving all question as to the derivation of title from Clapp to plaintiffs, the alleged right cannot exist, for Clapp was expressly restricted to an entry through the twelve acres of which the undivided moiety was conveyed to him in fee.

The only real question in the case arises from the clause in the agreement between Cannon and Henderson in 1844 giving the latter " the privilege to enter the land and open for coal at any place he may see fit, at fifty dollars per acre." Subject to the restriction expressed, that it was " not to interfere with any of the buildings, spring or garden of the said Cannon," it is fairly arguable that this was an unlimited and continuing right of entry and search until the coal, the subject of the grant, should be exhausted. It is however also susceptible, as the learned master indicates, of the construction that it was only a single option, and that " Henderson having once selected the ground for his operations could not thereafter go on to other lands of Cannon and continuously and repeatedly exercise this privilege." It is unnecessary for us to decide between these views, for the action of the parties themselves has settled the meaning beyond further dispute.

The master finds that between the date of the agreement, March 1844, and December 1849, " Henderson and parties under him went upon the premises and drilled and searched for coal all over said farm, and located and opened slopes, and mined and took out coal." Not being able apparently to come to a settlement with Henderson, Cannon brought ejectment in 1848 to enforce the performance of the agreement and recovered a conditional verdict, to be released on payment to him of six-teen hundred and odd dollars, he " making to the defendants a good title, agreeably to the article of bargain and sale," and also for twelve acres of land " to be surveyed so as to include all the slopes, openings and sinks in the occupancy of the defendants," and also for the undivided half of certain other twelve acres. The defendants paid into court the sum named in the verdict, and on September 20, 1850, Cannon filed in court a deed for the undivided half of the coal under the whole tract, and for the twelve acres including the slopes and openings, and also for the undivided half of the other twelve acres. Neither ver-dict nor deed, it is to be observed, followed strictly the agree-

ment of 1844. The verdict included twelve acres in severalty, surveyed so as to cover the slopes and openings already made by the defendants, and the undivided half of twelve more, not called for in the agreement, and the deed entirely omitted the clause giving Henderson the privilege of entry and search. This result of an equitable ejectment, reached six years after the original agreement, and in view of the acts and operations of the parties in the meantime, raises a strong inference that it was meant for a compromise, adjustment, and settlement of all questions of rights between the parties. And when we add the facts found by the master, that "since shortly after the date of the said verdict, the said Henderson and those under him have mined and removed a considerable quantity of coal, but as to the surface have confined themselves in making drifts, sinks, slopes and openings to the twenty-four acres" and that "no digging, mining or removing of coal was ever thereafter done or attempted on said land outside of the twenty-four acres," until 1887, a period of thirty-seven years, the conclusion becomes irresistible that the parties accepted the verdict and the deed as a final settlement, and that thereafter all the plaintiffs' rights and privileges under the agreement ceased.

For several reasons, each conclusive in itself, plaintiffs cannot sustain their alleged right as a necessary incident of the grant, or by analogy to a way of necessity. The parties having considered and agreed upon the mode of access to the coal conveyed, no implication can be allowed of any other way however convenient. Further, the right claimed is not of access to coal known to be there, but a preliminary right which can only arise by express agreement, to search and ascertain if there is coal there at all. And lastly, even if the claim were of access to the coal conveyed, the master finds that the existence of any body of mineable merchantable coal underlying the Cannon land outside the twenty-four acres, is, owing to the peculiar character of the coal and the way it lies in pots or basins, "no more than mere conjecture."

On the merits of the whole case the plaintiffs have failed to sustain their claim, and for this reason the bill was rightly dismissed.

Decree affirmed.