## Farrar *v.* Pittsburg & Eastern Coal Company, Appellants.

*Mines and mining—Deeds—Right to construct railroad.*

A deed conveyed coal underlying certain land "together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, coking, ventilating, draining and carrying away said coal, etc. (hereby waiving all surface damages, or damages of any sort arising therefrom, or from the removal of all of said coal), together with the privilege of mining and removing through said described premises other coal belonging to said party of the second part, its successors and assigns, or which hereafter may be acquired." *Held*, that the grantee had no right to use the surface of the land for constructing and maintaining a railroad for the transportation of coal from other lands.

Argued April 18, 1905. Appeal, No. 217, April T., 1905, by defendants, from judgment of C. P. Washington Co., Feb. Term, 1904, No. 1, for plaintiff on case tried by the court without a jury in suit of S. C. Farrar and J. W. Farrar v. Pittsburg & Eastern Coal Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for injuries to land.

The case was tried by TAYLOR, J., by agreement of the parties without a jury under the Act of April 22, 1874, P. L. 109.

TAYLOR, J., filed the following opinion:

### FACTS FOUND.

1. That the plaintiffs are the joint owners of the surface of

a tract of land in Smith township, Washington County, Pennsylvania, containing 197 acres, more or less, and prior to January 29, 1903, owned the Pittsburg vein of coal under said tract, and on that date by their deed conveyed to Lute Hornickel, who subsequently conveyed the same to the Pittsburg & Eastern Coal Company, a corporation, defendant: " All the coal of the Pittsburg vein in and underlying all " of said tract of land, bounded and described, with the mining rights, etc., expressed in their said deed of conveyance of said coal to said Hornickel in language following, to wit: " Together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, coking, ventilating, draining and carrying away said coal, etc. (hereby waiving all surface damages, or damages of any sort arising therefrom, or from the removal of all of said coal), together with the privilege of mining and removing through said described premises, other coal belonging to the said party of the second part, its successors and assigns, or which may hereafter be acquired."

2. That the defendant company is the owner of all the Pittsburg vein of coal underlying all of the lands adjoining the land of the plaintiffs and in some instances the surface as well, and the owner of about 2,500 acres of coal, in a solid block in which is included the coal underlying the land of the plaintiffs, and have projected a system of mines and workings for taking out said body of coal and have actually begun the work of so doing by the sinking of shafts, building tipples, etc., and is already mining coal from under portions of said tract, and at present engaged in taking out coal from under the said lands of the plaintiff through one of their hoisting shafts sunk on the land of an adjoining farm on the south owned by John Scott, a short distance from the boundary line between the plaintiffs and said Scott.

3. That the Hickory Branch of the Pittsburg, C. C. & St. Louis Railway, a common carrier, runs in an easterly and westerly direction through and over the surface of the southerly end of the plaintiffs' farm.

4. That the defendant company prior to the bringing of this suit in order to get the coal mined by it from under the plaintiffs' said land and other lands adjoining same, as well as the

coal from under the farms included in its said solid block of coal at the southerly end thereof, which it now brings to the surface through its hoisting shaft located on the said John Scott farm, entered upon the surface of the plaintiffs' land and appropriated to its use sufficient of their surface across the southwesterly end of plaintiffs' farm, upon which to grade and lay down ties and iron rails, and have graded, tied and railed the same for a standard guage steam railroad line, from a point on the boundary line between the land of plaintiffs and said John Scott to a point of connection with the said Hickory Branch of the P. C. C. & St. L. Ry., at or near the boundary line between the farms of the plaintiffs and A. M. Hayes tract on the west.

5. That the sole purpose for which the defendant company laid said surface railroad over and across the plaintiffs' land was to give it railroad connection with the P. C. C. & St. L. Ry. over which to car and convey the coal it is now mining and will in the future mine and hoist through the Scott shaft from under the plaintiffs' and other land adjoining, in order to get its coal so mined on to a trunk line of railroad and into the market.

6. That the sole claim of the defendant company for the right to enter upon, lay and maintain the railroad over and across the surface of the plaintiffs' farm in the manner above, is based upon the mining rights in finding of fact No. 1, granted by the plaintiffs in their conveyance of the coal to Hornickel.

CONCLUSIONS OF LAW.

1. That the mining rights granted by the plaintiffs in this case, in their deed of conveyance of the Pittsburg vein of coal under their land to Lute Hornickel, dated January 29, 1903, and recorded in Deed Book vol. 286, page 518, does not give the defendant, under which deed it claims the right to lay and maintain the railroad laid from its hoisting shaft on the land of Scott over and across the land of the plaintiffs to a point connecting the same with the P. C. C. & St. L. Ry., cannot be held to grant to the vendee, his heirs, successors and assigns, the right to enter upon, lay track and maintain the connecting railroad aforesaid.

2. That the plaintiffs are entitled to judgment in the sum of

$1,000 with costs, and upon payment thereof by the defendants, to a fulfillment of the terms of the agreement, made by the parties when the case was called for trial, and reduced to writing and filed in the case, a copy of which is printed in the agreement of submission of this case to the court for trial without a jury under the act of 1874.

## OPINION.

When the oral arguments in this case were made we were of the opinion that the defendants could not be said to have committed a trespass in laying this lateral railroad, so long as it was mining out coal owned by it under the plaintiffs' land, and doubtless made some such an intimation from the bench; but after an examination of the briefs submitted by the counsel for the parties we are forced to the conclusion that the defendants have committed the trespass on the land of the plaintiffs, so charged in the plaintiffs' statement, and that it is an attempt under mining rights to exercise the privilege of maintaining a lateral railroad over the lands of another to the line of a common carrier to get the products of their mine into the market, without complying with the provisions of the lateral railroad act. Neither in express words nor by implication can the grant of mining rights in the deed, which conveyed this coal, be given or can be extended to the right to lay and maintain this road across the plaintiffs' land.

The sole question in the case is, does the mining rights granted under this deed give the defendants the right of way over the surface of the plaintiffs' land to build a coal railroad for the purpose of transporting, from a coal shaft located on another farm to a point of shipment on a third farm, coal mined and brought out through that shaft?

We are perfectly familiar with the decisions relied upon by the defendant to the effect that where mining rights grant the privilege of mining and removing through the premises other coal belonging to the said second party, that the said second party, where their workings come to the surface on one place at the outcrop and near mine openings at the outcrop on the other side, may, under such mining privileges, lay and maintain a road from one opening across to the other; but we know of no decision broad enough to give to the owner of the coal,

under such mining rights and privileges as are granted in the deed in question, that permit or allow the owner of coal to lay lateral railroads from its hoisting shaft on the land of another, or across the surface of another landowner in order that he may connect with a main line railroad for shipment, and where such privilege is sought to be exercised by the miner and shipper of the coal and he undertakes to assert it without the consent of the owner of the surface, he must do so under the provisions of the lateral railroad act. If we should hold in this case, for instance, that such a right was granted in the deed of conveyance of the coal by the plaintiffs to the defendant, in this case the right to build one railroad to connect with a coal carrying road, it would carry with it the right to build as many as the defendant company deemed necessary in mining out and shipping to the coal carrying road the large body of coal that they own in this particular place. The result of this would be that the surface land of the farmer might be gridironed with railroad tracks for the use of the coal company in getting its coal to market, and thus practically destroy, without compensation to him, the use of his farm. It cannot be held, therefore, that any such state of affairs as this was in contemplation of the parties when the grant of the mining rights, referred to in this deed, was given and, as we have said, if such grant could be held to be broad enough to give them the right to lay one road from this shaft at the convenience of the coal company they could exercise the same right to run lateral roads from other shafts, which they have already located in their mining scheme upon the land of adjoining owners, across the lands of the plaintiffs; and as they have already other shafts located on farms adjoining or nearby the farm of the plaintiffs and would claim this right because 'they were mining coal from under the plaintiffs' land, they could mine and carry, on these lateral roads across the surface of the plaintiffs' land, all the coal in the large tract they own so long as there was still some coal under the land of the plaintiffs that they were mining.

If the construction which the defendants put upon the deed be adopted a series of shafts could be located on other adjacent farms all around this farm and a series of coal tracks, radiating from the hickory branch, can be laid upon this farm, leading

towards those shafts, and thus the plaintiffs' surface can be practically destroyed. If this could be done upon the theory that because the defendants can use the entry to bring some of the Farrar coal out through such shafts, therefore the coal roads laid across the Farrar surface to reach those shafts can be regarded as ways into the Farrar coal, this would be giving to the clause in question a very elastic interpretation, and an effect far beyond anything in contemplation of the grantors. This question is of importance, because it concerns not simply what the defendants have actually done already, but also what it may do hereafter. If defendants' contention is correct, instead of locating one shaft at a central place to take out the coal from under this farm—it has already located shafts upon other lands on one side of the farm within 200 feet of each other; if it could be held within its rights in doing what it has done, it could locate other shafts to any number it may choose on lands lying upon other sides of the farm, and lay out coal roads to them across this farm.

In construing the clause now under consideration other lands cannot be considered. Such incumbrances and servitudes as are contended for by the defendants under this deed cannot arise, unless they are expressly provided for, and reservations to the extent are made in plain, unambiguous terms: Barringer & Adams on Mines, page 590.

We do not overlook the fact that the deed also grants the privilege of transporting other coal through said described premises. Does this authorize the construction of a coal road over the surface of the farm to a shaft located on another farm ? We think it does not; that by "said described premises," is meant, not the tract of surface overlying the coal which was conveyed by the deed, but the coal vein itself which was the subject of the grant previously made. The natural, obvious and prima facie meaning of the phrase, "through said described premises," as used in this deed, is in accordance with the construction contended for by the plaintiffs, and there is no doubt under it but that the defendants have the right through any entry or coal road that they may make under the surface of the plaintiffs' land by taking out the coal which belongs to them; they have the right to transport other coal through said openings, or in case they had a shaft sunk on the plaintiffs'

farm, they would have the right to bring coal from under other lands owned by them to the surface through such shaft. But under this deed we think they have not the grant or privilege to lay a track or tracks of railroad across the surface of the plaintiffs' land to give them an outlet to a railroad carrying their coal to market.

There are two distinct grants contained in this deed : one is of the coal underlying the plaintiffs' land and the mining rights incidental to the mining and removal of the coal; the other is of a privilege not incidental to, and having no connection with, the mining of this coal, namely, the privilege of transporting other coal through certain " premises." It is only in the description of the second grant that the word " premises " occurs, as to the previous clause by which the subject-matter in the case is defined. In a conveyance, where, after a completed description of the subject-matter of a grant or demise the words " said described premises " occur in a subsequent clause, they mean, prima facie, the other above granted or demised. The following definitions of the words " premises " are given in Anderson's Law Dictionary :—" a distant portion of realty ; land or lands ; tenements, buildings, in common parlance, land with its appurtenances : " in a conveyance, " the thing demised or granted by the deed." Anderson's Dictionary of Law. " The term ' premises ' is used in common parlance to signify land, with its appurtenances ; but its usual and appropriate meaning in a conveyance, is the thing demised and granted by the deed : " Black's Law Dictionary. " In a conveyance when the property to be dealt with has been fully described, it is generally referred to the subsequent part of the deed as ' the premises hereinbefore described and intended to be hereby assured,' or similar words. From this use of the word ' premises ' has gradually occurred the popular sense of lands and buildings, originally it was only used in this sense by laymen : " Rapalje & Lawrence Dictionary.

In the former clause a right of entry is granted—a right of way into, upon and under said lands, at such points and in such manner, etc., for the purpose of mining the coal conveyed. There is no similar language in the clause respecting transporting other coal; the whole idea of it seems to be that having already entered to mine this coal, and having, for that purpose

taken possession of so much of plaintiffs' soil as is requisite, therefore the grantee may exercise the additional privilege of transporting other coal in the same manner, and over the same ways, that he pursues in transporting coal mined from plaintiffs' land. The words "said described premises," and the phrase, "other coal," seem to be used in opposition to and in contrast with each other. The plain meaning seems to be that other coal may be transported through the coal conveyed by the deed and appurtenances thereof.

As we have said before, any other construction than this, and being the one contended for by the plaintiff, would result in giving to the grantee the use, and to an unlimited extent, of the surface of the farm so that coal roads radiating in all directions, to different pits, might be located about upon it, thus taking away from the grantors an amount of surface, and doing them an amount of injury, that they could not possibly before see or have in contemplation, at the time of making the grant, and could not possibly measure in fixing the price at which they sold their coal. It would be virtually surrendering the surface of their land along with the sale of the coal to the use of the owners of the coal without any compensation for the surface. No such idea was in contemplation of the parties when the deed was made, and when we were impressed with this view of the question it is made plain to the court that no such claim as contended for by the defendants in this suit can be upheld.

The testimony that we admitted under objections pro forma at the time of the trial presented by the defendants as to what occurred between S. C. Farrar and Mr. Hornickel and Mr. McIlvain relative to certain options which S. C. Farrar sold to Hornickel is incompetent and irrelevant, for the reason that the parties to this suit must stand or fall in their respective claims upon the scope of the mining rights expressed in the deed. It is also contradicted by Mr. Farrar. The construction of the grant is a question of law to be determined from the language of the instrument itself. No attempt has been made to reform the instrument by showing that it has been agreed that the grantee should be given certain rights, and that the proper words granting them were omitted by fraud, accident or mistake. The utmost that is attempted along that

line is the presentation of contradicted evidence that one of the grantors, S. C. Farrar, on occasions previous to the execution of the contract, in pursuance of which this deed was given, in connection with the discussion of certain contracts made by other parties, expressed an opinion as to the legal construction of a certain form of words afterwards used in said contract and deed. There was no agreement that the instrument now in question should be interpreted in a particular way but (even according to the disputed evidence for the defendant) barely an expression of an opinion upon a question of the law. Such an expression of opinion can not control the proper legal meaning of a contract subsequently made.

The fact that S. C. Farrar has made a good profit in the sale of the options, which he had taken from other landowners, cannot affect this case in any way, nor can it affect it for the plaintiff that John W. Farrar was not present and did not participate in the conversation or is shown to have shared in the profits of his brother out of other coal lands optioned and sold. As we view it, what binds S. C. Farrar in this case also binds John W. Farrar, his brother and cotenant in common, because the evidence clearly shows that S. C. Farrar acted in all respects in relation to the Farrar land as agent for his brother, with full authority to act for him as for himself, and both having joined in the deed which is the contract between the parties, he certainly is bound by all its covenants.

As we view the contention of the defendants here, it is an effort to have the court, for the first time so far as we are able to discover, hold that a deed, conveying the coal and the mining rights and privileges expressed in the language of this deed, extends the right to the vendee to construct lateral railroads over another's land for the purpose of getting the coal to the market without proceeding under the lateral railroad act, or compensating the landowner for the right to be enjoyed.

Our ruling in this case will not render abortive any of the rights of the defendant under this deed, unless such a right is granted in express terms or in such language as is not ambiguous, or unless it is clearly shown to have been the contract between the parties and is shown to have been omitted by fraud, accident or mistake. The claim of the defendant must be held to

the plain wording of the deed.    While it is true that the grant
of a right to do a certain thing is to be construed as includ-
ing all the incidental rights requisite to make a grant effectual,
the construction we have placed upon the language of this
deed does not limit or curtail any incidental rights requisite
to make the grant effectual.   It was for the coal and the right
to remove it and other coal through the space left when the
coal was removed from the land of the plaintiffs, and if the de-
fendant saw fit to sink a shaft for hoisting coal or ventilation
on the plaintiffs' land.   It is another and different right to be
acquired by the defendant, when it brings its coal to the sur-
face, to provide a railroad to get it to market, and if it is
found to be necessary, over the land of the plaintiffs; when
that right was not given they must acquire it by condemnation
under the lateral railroad act or by the purchase of it outright
from the owners of the land.

We have before us the case of McCracken v. Gumbert, 131
Pa. 36, but in that case the court holds that it is the duty of
the court to give such construction, that to the case in ques-
tion shall give it effect.   To do this, the court in that case holds,
that the right to bring the coal from other land to the entries
and railways under the McClure is necessarily incident to the
right to transport it over them, and that in opening a way
from the side entry to the surface, and over a ravine to the
Pierce, the appellants were not trespassers but were in the exer-
cise of a clear, legal right under the terms of the grant.   The
facts of that case are very different from the privilege con-
tended for under the grant in this case.   Switches and sidings
upon which to stand empties and load cars from the tipple
are properly held to be necessary incidents to such a grant as
contained in this deed, where the shaft and tipple, etc., are
located on the land of the owner of the surface, who has
sold his coal, but to hold that they can extend these across a
man's land for the purpose of hauling their coal a consider-
able distance to connect with a coal hauling road would be
holding something that was not in the contemplation of the
parties and would be equivalent to the landowner surrender-
ing rights that are not incorporated in the mining rights.

It is no answer to the claim of the plaintiffs that this is a
trespass for the defendants to say that the purchase and open-

ing this block of coal has been a great benefit to the Farrars, or that it is a mere personal grievance such as should be surrendered by the individual to the necessities of the great public industry, and which subserves a great public interest. To give such a right to the defendant company would be taking private property for corporate use, in this case without compensation to the owner.

By placing the construction upon the language of the grant in this deed we have, we are not placing the coal of the defendants beyond the reach of the public to the wrong of the public, as was said by Chief Justice PAXSON, in Chartiers Block Coal Co. v. Mellon, 152 Pa. 286 ; nor are we holding contrary to the broad proposition of Justice WILLIAMS laid down in the same case at page 299, wherein he says, that " the several layers or strata composing the earth's crust, are by virtue of their order and arrangement subject to reciprocal servitudes ; and as these are imposed by the laws of nature, and are indispensable to the preservation and enjoyment of the several layers and strata to an from which they are due, the courts should recognize and enforce them." This broad principle we have followed in many of the conveyances for coal and oil and gas, where the right and duties of the parties had not been made clear under their conveyances or leases.

And now, July 16, 1904, the foregoing decision of this case is ordered filed in the office of the prothonotary and notice thereof given by said officer forthwith to the parties or their attorneys, and if no exceptions thereto are filed in said office within thirty days after service of such notice, judgment to be entered for the plaintiffs under agreement of the parties in the sum of $1,000 and costs.

*Error assigned* was the judgment of the court.

*W. R. Murphy*, of *McIlvain, Murphy & Jones*, for appellant.— The word " premises " being used in a separate clause of the deed wherein the plaintiffs granted to the defendant certain rights to enter upon the surface of their farm, and waiving damages which should or might be done to the surface of said farm by reason of the mining of the coal, the previous matter concerning which something was proposed was

right upon the surface, and the word "premises" relates to the surface: Ins. Co. v. Mund, 102 Pa. 89.

The word "premises," being a relative word, must refer to the next antecedent, unless it clearly appears that reference is intended to some other part of the deed for the antecedent.

The court, in construing the deed, cannot say that the consideration paid for the privilege was too great or too small, when that question is not properly before the court: Bronson v. Lane, 91 Pa. 153; McCracken v. Gumbert, 131 Pa. 36.

When an absolute deed of coal confers upon the grantee the privilege of mining and removing through entries made in said coal other coal belonging, or which may hereafter belong, to the grantee, the latter has the right not only to passage through the entries, but also to raise the coal brought from other lands owned by him to the surface on the grantor's land: Potter v. Rend, 201 Pa. 318.

*James I. Brownson,* with him *John W. Donnan* and *Alvan Donnan,* for appellees.

Opinion by Morrison, July 13, 1905.

This is an action of trespass brought by the plaintiffs to recover damages from the defendant caused by the construction and operation of a railroad over the surface of certain lands owned by the plaintiffs, they having conveyed to the defendant all of the coal underlying the same with the rights and privileges contained in the following clause in the deed : " Together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, coking, ventilating, draining and carrying away said coal, etc., (hereby waiving all surface damages, or damages of any sort arising therefrom, or from the removal of all of said coal), together with the privilege of mining and removing through said described premises other coal belonging to said party of the second part, its successors and assigns, or which hereafter may be acquired."

After issue joined the parties waived a jury trial and referred

the cause to the court under the act of April 22, 1874, P. L. 109 agreeing that if the court shall, upon trying said case, render judgment for the plaintiff, the damages shall be assessed at the sum of $1,000, and judgment entered for that sum with costs.

The learned court upon careful findings of fact and conclusions of law and an elaborate discussion of the questions involved, held that the clause above quoted did not grant to the defendant the right to construct and maintain the railroad in question and that by such construction and operation of the railroad the defendant was a trespasser, and entered judgment in favor of the plaintiffs and thereupon the defendant appealed to this court.

At the argument it was contended that the learned court was in error, and that the clause in question, with certain parol evidence, entitled the defendant to construct and operate the railroad in question.   First: On proper construction of the language above quoted, helped out by certain parol evidence of the construction put upon it by the parties at the time the agreement and deed were executed; and second: That the evidence was sufficient to establish a parol license in the defendant to construct and operate the railroad.   But upon careful consideration of the evidence, the findings of fact, conclusions of law and arguments of the respective counsel, we are of opinion that the learned court reached a correct conclusion.

As to the parol testimony, we think it is not sufficient to control the construction of the written covenant.   Moreover, the court declined to find as a fact that S. C. Farrar agreed with the representatives of the defendant at the time the deed was executed, that the defendant might use the surface of the lands for constructing and maintaining a railroad for the transportation of coal from other lands.   As to the parol license, an examination of the testimony convinces us that the case was not tried on that theory.   It may be conceded that, if it had been so tried and that question raised, the learned court might have found in favor of or against such parol license, the testimony on that point being in dispute.

The court found as a fact that S. C. Farrar had authority, as agent for his brother, to make the sale and agreement for the conveyance of the coal, which was subsequently consum-

mated by the deed executed by both of the Farrars. But a serious question would arise as to the power of S. C. Farrar to bind John Farrar, by parol agreement, that the defendant company might construct railroads across the Farrar farm for the transportation of coal from other lands.

The parties put their agreement and conveyance in writing and we are of opinion that the learned court was fully warranted, under all of the evidence, in the construction put upon the deed. It seems to us that, in view of the importance of the transaction and the fact that eminent counsel were consulted, the right to construct and operate the railroad would have been plainly provided for in the writings, if the same had been in the contemplation of the parties. It is not contended, in the very able argument for the appellant, that anything was left out of the agreement and deed by fraud, accident or mistake. Nor is it contended that the writings were executed on the faith of any parol agreement without which they would not have been executed.

In view of the discussion of the questions involved and the citation of authorities by the learned court below, we do not consider it necessary to enter into a further discussion of the questions raised in this record. We are satisfied with the decision of the court below and think the reasons given sustain the judgment.

The assignments of error are all dismissed and the judgment is affirmed.