## Blackburn v. Youghiogheny & Ohio Coal Co. of Pennsylvania, Appellant.

Argued April 18, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John Kunkle* of *Kunkle, Walthour & Trescher,* for appellant.

*Chas C. Crowell* of *Crowell & Whitehead,* for appellee.

Opinion by James, J., October 2, 1933:

On November 24, 1899, John Fullerton conveyed to John G. Patterson all the Pittsburgh or six foot vein of coal in and underlying all that certain tract of land mentioned and described in the bill in equity filed in this case, together with the following mining rights:

"And together with said coal and appurtenant thereto the free and uninterrupted right of way into, upon and under said surface at such points, and in such manner, as may be proper and necessary, for the purpose of digging, mining, draining, ventilating and carrying away all the said coal; said grantee, his heirs and assigns, to be in no wise liable for damage for the failure to support the overlying surface, or destroy-

ing or diverting the springs of water, or water flow thereon or anything on said surface or under the same, by reason of the removal of said coal. Together with the privilege of mining and removing through said described premises other coal or material belonging to, or which may hereafter be acquired by the said party of the second part, his heirs and assigns.

"Said party of the second part, his heirs and assigns, to have the right to use the water from the surface of said land in said mining operations (except so much as may be required by the party of the first part for domestic purposes); also waiving any damage that may accrue by reason of the manufacturing of any of said coal into coke or other products, and with the further right to occupy and use so much of said surface as may be required in carrying on the coal business or to construct and maintain the necessary machinery for mining and producing coal; and any additional surface required by the said grantee, his heirs and assigns to be paid for at the price of one hundred (100) dollars for each and every acre so occupied when taken and used for such purpose."

On March 4, 1911, John G. Patterson et ux., conveyed all their right, title and interest in this property, together with the mining rights, as aforesaid, to the Youghiogheny and Ohio Coal Company of Pennsylvania, the appellant.

John G. Fullerton died March 23, 1911, and by his will devised said tract of land, excepting the coal and mining rights, to his son, Albert Fullerton, for life. Albert Fullerton died June 5, 1922. From time to time, beginning on May 17, 1924, John C. Blackburn, the plaintiff, acquired by various conveyances the interests of the heirs of John G. Fullerton after the expiration of the said life estate until, on May 22, 1931, he became the sole owner of the land in fee, excepting the coal and mining rights aforesaid.

In the year 1916, during the life tenancy of Albert Fullerton, the defendant company drilled a bore hole approximately six inches in diameter down through the surface of this tract of land to the Pittsburgh vein of coal and, in 1917, there were put down through said bore hole electric wires to furnish current for the operation of a rope-haulage engine which was located under this particular tract of land. From this rope-haulage engine extends a wire rope known as a tail-rope along the main haulage way of the mine to distant parts thereof, beyond the boundaries of the land of the plaintiff, for the purpose of hauling other coal than that under the plaintiff's land to the rope-haulage engine from whence it is conveyed to the mine opening on the defendant's land. The electric current which passes down the bore hole is also used to supply lights and a system of signal bells along the haulage way under other tracts of land than that of the plaintiff. Surrounding this bore hole opening is a fenced-in space sixteen feet square which also contains the transformers which reduce the current from 6600 volts to 440 volts before entering the bore hole.

Plaintiff brought this bill in equity to restrain the defendant company from continuing to maintain its wires and appliances in the bore hole, upon and through the surface of his lands and the court below made a final decree forever restraining the defendant from the further use of the bore hole drilled by it through the surface of plaintiff's land for the purposes for which it is used and from maintaining an enclosure, wires, appliances, etc., around said bore hole and over the surface of plaintiff's land, and further directed defendant to fill up said bore hole and to remove the poles, wires, etc., within six months from the date of the decree. From this decree defendant appealed.

The learned chancellor has filed an exhaustive and learned opinion in this matter which in a large meas-

556

ure we would adopt as our opinion if it did not involve discussions of questions which are not pertinent here. In substance the chancellor concluded that the mining rights and privileges as set forth in the deed to the defendant company given by a predecessor in title to the plaintiff were not sufficiently large to extend to the grievance complained of in the bill of complaint; that it was not in the minds of the parties and it was not contemplated at the time of the execution of the deed that a high power tension line should be constructed over the plaintiff's property and that a bore hole should be put down in the midst of his farm for the purpose of furnishing power to haul coal from lands other than the plaintiff's.

It is the contention of the defendant company that under the terms of the mining rights, which were granted to its predecessor in title in the year 1899, it has the legal right to continue to use the bore hole for the purposes hereinbefore set forth. It should be borne in mind that there are approximately only 4,400 tons of coal remaining under the plaintiff's land, if it could all be recovered, and that the bore hole is unnecessary for the mining of coal under the land of the plaintiff and the only real need of the electric power taken through this bore hole is for defendant's other mining operations, and the bore hole is not used for the mining of coal under the land of the plaintiff but is used entirely for the defendant's mining operations outside of and beyond the plaintiff's land.

Is there anything in the language of the mining rights which in itself, or by necessary implication, confers upon the defendant this right? We do not think so. In the last sentence of the first paragraph of the mining rights is the only reference to any coal other than that under plaintiff's land and this grants "the privilege of mining and removing through said described premises other coal or material belonging to

or which may hereafter be acquired by the said party of the second part, his heirs and assigns." Surely there is not implied the privilege of sinking a bore hole on plaintiff's land for the purpose of furnishing electric power to mine and remove coal from adjoining properties.

Defendant contends that the language of the second paragraph of the mining rights grants the right to use the bore hole for the aforesaid purposes. This language is, "and with the further right to occupy and use so much of said surface as may be required in carrying on the coal business or to construct and maintain the necessary machinery for mining and producing coal and any additional surface required by the said grantee, his heirs and assigns, to be paid for at the price of $100 for each and every acre so occupied when taken and used for such purposes." What coal business is referred to? Plainly the coal business of mining and removing the coal granted in the deed. The second paragraph is entirely separate and distinct from the first paragraph and the only reference to coal other than that conveyed by the deed is in the first paragraph which grants the right of removing other coal through said premises. We fail to see how it can be successfully contended that this language gives defendant the right to maintain the bore hole on plaintiff's land for the purpose of mining and removing coal from other land of defendant.

While there seems to be no reported case exactly on all fours with the case at bar, there are many which by analogy sustain this view. In Cubbage v. Pittsburg Coal Company, 216 Pa. 411, 412, 65 A. 797, the grant to the coal company included "the right to mine and carry away said granted coal and in so doing to exercise the usual and ordinary privileges of ventilation and drainage upon the land of said Joseph K. Cubbage, but in such manner as to do no unnecessary

injury thereto, with the right also to transport other coal through underground entries made or to be made in the hereinbefore granted coal and over the railway hereinafter mentioned; ...... also, the use of one acre of land parcel of the tract aforesaid, at and about the pit mouth for a check house and other necessary and convenient uses in connection with mining operations, such as for deposit of timber, coal, slack, etc." It was held that the mining rights did not include the right to sink a ventilating shaft in the land for the purpose of ventilating mines under adjoining lands.

In the above case, the 31 acre tract of coal, to which the above mining rights applied, had been mined and practically exhausted for more than twenty years except so much as was necessary to support the entries and the surface over them. Mr. Justice Brown stated the question involved to be as follows: "As the result of our examination of the case we regard the real question to be the right of the coal company to erect a ventilating shaft on the Cubbage surface for the purpose of ventilating the coal territory adjoining or surrounding the 31 acre tract." So, in the instant case, the real question is the right of the coal company to sink a bore hole on the Fullerton surface for the purpose of removing coal from the territory adjoining or surrounding the tract in question.

In Potter v. Rend, 201 Pa. 318, 50 A. 821, it is decided that "where an absolute deed of coal gives to the grantee the privilege of mining and removing through any entries made in said coal, other coal belonging to the grantee, and also gives to him the right 'to enter upon the surface of said land for the purpose of taking out and placing on the same any material that may be necessary in operating the coal underlying the land, ...... with the privilege to the party of the second part to buy at the mouth of said shaft three acres of surface at the rate of seventy-five dollars per

acre,' the grantee has the right to deposit only the gob and refuse from the coal underlying the land described in the deed, and has no right to deposit waste material from coal mined under other lands.'' This case goes *only* so far as to decide that the privilege of mining and removing, through entries made in said coal, other coal belonging to or which may hereafter belong to said party of the second part, covers the right to raise the coal to the surface through grantee's land.

In Friedline v. Hoffman, 271 Pa. 530, 115 A. 845, Mr. Justice WALLING said at p. 534, ''A way of access to property, granted or reserved, will be implied only when necessary to give effect to the grant or reservation (Com. v. Burford, 225 Pa. 93; Ogden v. Grove, 38 Pa. 487; Marvin v. Brewster Iron Mining Co., 55 N. Y. 538; 14 Cyc. 1174), but never merely as a matter of convenience: Howell v. McCoy, 3 Rawle 256; Francies's App., 96 Pa. 200; 19 Corpus Juris 922. . . . . . .

''Where the parties have agreed as to the method of access to the coal, the law will not imply a different way, although more convenient: Titus v. Poland Coal Co., 263 Pa. 24; Greek v. Wylie, 266 Pa. 18; Bascom v. Cannon, 158 Pa. 225. Here, however, independently of such an agreement, defendants have a practicable way over their own lands for the removal of the coal in question; hence, the law can not allow them a right of way by necessity over plaintiff's land.''

In Shaulis v. Quemahoning Creek Coal Co., 262 Pa. 535, 538, 105 A. 826, the court said, '' 'Is the right to remove and carry away coal under said land to be construed to mean the right to carry coal not only under said land, but over and upon said land?' To state the question is to answer it. The word 'under' must be accepted in its ordinary sense and can not be enlarged so as to be deemed to grant the right to carry

and transport coal over the surface of the land as well as underneath it.''

This court held in Farrar v. Pittsburgh and Eastern Coal Co., 28 Pa. Superior Ct. 280, that where ''a deed conveyed coal underlying certain land, together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining, coking, ventilating, draining and carrying away said coal, etc., (hereby waiving all surface damages, or damages of any sort arising therefrom, or from the removal of all of said coal), together with the privilege of mining and removing through said described premises other coal belonging to said party of the second part, its successors and assigns, or which hereafter may be acquired,'' the grantee had no right to use the surface of the land for constructing and maintaining a railroad for the transportation of coal from other lands.

In the Farrar case, at page 287, it was the opinion of the court below that ''any other construction than this . . . . . . would result in giving to the grantee the use, and to an unlimited extent, of the surface of the farm so that coal roads radiating in all directions, to different pits, might be located about upon it, thus taking away from the grantors an amount of surface, and doing them an amount of injury that they could not possibly before see or have in contemplation, at the time of making the grant, and could not possibly measure in fixing the price at which they sold their coal.''

So it is in the instant case. If the position maintained by the appellant is held, then, as stated by the court in its opinion, ''no part of the land of the plaintiff is free from the right of the defendant to drill a bore hole from the surface down to the coal and there is no limit to the number of bore holes which

the defendant could drill. Such a construction of the present mining rights would make the land worthless and take away all the rights of the landowner in the land."

Each case must be determined upon the plain intent of the language used by the parties to the contract and in this case the language is clear and without ambiguity.

The other cases cited by appellant are all easily distinguishable from the case at bar and none of them bear out its contention.

The point has been raised that the plaintiff has been guilty of laches in making this application for injunction. It is true that he first acquired an undivided interest in this land in the year 1924 and became sole owner thereof in 1931, but, if there has been laches, no injury is shown to have been done to the defendant; indeed it has inured to its benefit as it has had the use of the bore hole since 1917, of which it might have been deprived had an application been sooner made.

Laches will not be imputed to a party where his delay has not resulted in injury to his adversary: Selmer v. Smith, 285 Pa. 67, 131 A. 663.

Decree affirmed.