## Eastern Gas & Fuel Associates v. Kalp

*Ray, Buck, John & Hook,* for plaintiff.

*Anthony Cavalcante* and *William E. Duffield,* for defendants.

FEIGUS, J., July 6, 1965.—This case is before the court en banc upon defendants' preliminary objections

to a complaint in equity following a hearing upon a request for a preliminary injunction seeking to restrain defendants from interfering with plaintiff's alleged coal mining rights.

Plaintiff's amended complaint sets forth a conveyance by defendants' predecessor in title to its predecessor in title of all the coal lying below the Sleasman vein of coal underlying defendants' 83-acre tract of land. by deed dated November 6, 1917, and recorded in deed book vol. 365, page 243. Said deed contains the following mining rights and restrictions:

"Together with the free and unqualified right to mine and remove all of said coal intended to be conveyed hereby underlying the said described tract of land, below the said vein now opened on the said Sleasman tract, with all mining rights and privileges necessary and convenient to such mining and carrying away of the same, without liability for damages to the overlying strata or surface or anything therein or thereon, together with the free and unrestricted right to remove and carry away under said described premises other coal belonging to said second party or that may hereafter be acquired by it or its successors and assigns; also with the right to second party to drain and ventilate said coal, but the said privileges of draining and ventilation to be restricted to the mines or underground passages and not on the surface of said lands.

"Excepting and reserving, however, thereout and therefrom a portion of said coal underlying and adjacent to the dwelling house and farm buildings now or formerly on said tract, which reservation is located, bounded and described as follows:

"For location begin at the fallen chestnut designated as the beginning place of the foregoing description; thence North 87¾ degrees East 31.7 perches to corner of said reservation; thence South 81 degrees East 8.8 perches; South 9 degrees West 18.2 perches; North 81

degrees West 8.8 perches; and North 9 degrees East 18.2 perches to the place of beginning, containing 1 acre and leaving the net amount of coal intended to be conveyed hereby, as 82 acres and 41 perches."

Plaintiff contends that the foregoing mining rights include the right to construct a 2,000 foot long high tension electric transmission line and five telephone poles and an electric transformer substation structure approximately 30 feet by 16 feet in dimension upon the surface of the overlying strata, as well as to drill a 12 inch bore hole through said overlying strata and the Sleasman vein of coal, for the purpose of transmitting an adequate supply of electric power to its proposed coal mining operations below defendants' surface premises. The complaint sets up no claim of a mining right or easement of necessity, but asserts that a supply of electricity by a convenient and reasonable route over and through the surface of defendants' land is included in the grant of the coal, either expressly or by necessary implication. Plaintiff admittedly has subterranean access to the coal and is able to mine and remove it via its adjacent large scale mining operations, and can transmit and transform the desired electric power in and through its mines, albeit with greater attendant construction and operating costs.

In our view, the coal estate and mining rights here vested in plaintiff do not expressly or by necessary intendment include an easement or right to produce or remove the coal via the superincumbent estates, or to penetrate the surface. The instant grant of mining rights is explicit and relatively complete and we are not required to resort to extraneous rules of construction to interpret the granting and habendum clauses: 12 P. L. Encyc. 28; Shaulis v. Quemahoning Creek Coal Co., 262 Pa. 535, 539; Hardes v. Penn Charcoal & Chemical Company, 175 Pa. Superior Ct. 431. The language of a deed conveying coal to a coal mining com-

pany should be read in the background of the transaction and the relationship of the parties as well as the technological development and conditions existing in the coal mining industry at the time of the conveyance: New Charter Coal Company v. McKee, 411 Pa. 307, 314; Wilkes-Barre Township School District v. Corgan, 403 Pa. 383; Snyder v. Plankenhorn, 398 Pa. 540, 543; Price v. Anderson, 358 Pa. 209, 220.

We conclude that the asserted right to erect an electric power line, poles, transformer substation building and power line bore hole over and through the surface of defendants' farm would arise only by implication or from absolute necessity. Where a mining right or easement is not expressed and is sought to be implied as attached to the grant of the fee, it must clearly appear as the intention of the parties: Fitzell v. Philadelphia, 211 Pa. 1, 5; Taylor v. Gross, 195 Pa. Superior Ct. 225, 232.

Mining rights of necessity, as distinguished from mere convenience, are incidents of grants of coal estates. However, a mining right of necessity will be implied only when an absolute necessity or its equivalent is shown to exist in order to give effect to a grant or reservation of underlying coal, so that it may feasibly be mined and removed, and not merely upon a showing or claim of convenience: Friedline v. Hoffman, 271 Pa. 531, 534; Shaulis v. Quemahoning Creek Coal Company, 262 Pa. 535; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Blackburn v. Youghiogheny & Ohio Coal Co., 110 Pa. Superior Ct. 552.

In the absence of a showing of necessity, we are not convinced that surface penetration privileges or the construction of surface electric power installations, not expressly granted, are impliedly included in this general grant of mining rights and privileges "necessary and convenient to such mining and carrying away". Nor are we, at this stage of mechanization and

470

innovation in the mining industry in this Commonwealth, prepared to impose such an implied servitude upon the surface estate not heretofore recognized. In our opinion, it would amount to an improper surcharge and untenable extension of the original grant, and its recognition would seriously jeopardize and adversely affect surface owners generally by exposing them to unjustified and oppressive intrusions upon their right to a peaceful and uninterrupted possession of their surface estates.

ORDER

And now, July 6, 1965, after preliminary hearing and argument, the rule granted upon defendants to show cause why a preliminary injunction should not issue is discharged; and defendants' preliminary objections to the amended complaint are sustained, and the amended complaint is dismissed.