## Fredericks *v.* Pennsylvania Canal Co., Appellants.

*Eminent domain—Constitution, article XVI, section 8.*

A canal company, which places upon its dam permanent splash-boards, having the effect of raising the water, and hence increasing the area of the dam, is liable to a property owner under article XVI, section 8 of the constitution, for the injury resulting from the consequent increased overflow of his land occasioned by this " enlargement of their works."

*Practice—Amendment of narr—New cause of action.*

The narr originally filed having alleged damage occasioned by the use of splashboards on the dam, an amendment, setting forth that the overflow was also caused by the closing of a chute in the dam, did not introduce a new cause of action and was therefore properly allowed.

Argued March 15, 1892.   Appeal, No. 33, Jan. T., 1892, by defendants, from judgment of C. P. Clinton Co., Sept. T., 1882, No. 151, on verdict for plaintiffs, Margaret D. Fredericks et al.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Case to recover damages for overflowing of plaintiffs' land occasioned by raising of defendant's dam.

The original narr filed in 1883 alleged damage to plaintiffs by reason of the defendants' having raised the height of their dam twelve inches, by placing planks upon and along the same, whereby plaintiffs' land was overflowed. On August 31, 1888, plaintiff asked leave to file an amended narr, in which it was

alleged that defendant did, at the time mentioned in the narr and before and since said date, close a chute in said dam, by reason whereof the water was dammed back, etc. Defendant excepted to the filing of this amended narr. [1]

At the trial before MAYER, P. J., the evidence was to the effect that plaintiffs were the owners of a farm bounded by the Bald Eagle Creek and extending for some distance along the creek, containing 140 acres. Defendant was a company owning and operating a canal and the owners of a dam erected on the Bald Eagle Creek by the State in 1833. The State operated the canal until 1858; subsequently the present defendant came into possession and had since operated the same. It was shown that since 1839, when the water became low in the summer months, it had become the custom of the owners of the canal to put splashboards upon the breast of the dam and to close up the chute for the purpose of raising the water to feed the canal. When the floods raised the water, these boards were washed away by the rising of the stream, and the obstructions placed across the chute were also carried away. The contention of plaintiffs in this case was that in place of these temporary devices, defendant had permanently raised the dam and closed the chute, and had thus caused the overflowing of defendant's land.

The court left it to the jury to determine these questions of fact, the charge being, in part, as follows:

" Now, the first question for the jury to determine under the evidence is whether these overflows were caused by the splashboards placed on the dam and the obstructions placed across the chute. For, unless the splashboards placed across the breast of the dam and the obstructions placed across the chute occasioned the injury sustained by the plaintiffs, they cannot recover damages from the defendant in this suit. The placing of these obstructions must be the cause of the injury complained of. If the injury sustained by the plaintiffs arose from any other cause, the defendant cannot be visited with damages. It appears that in 1859 or 1860 a charter was obtained from the legislature for the Bald Eagle Boom Company, and by the terms of their charter it was authorized to erect and maintain a boom in the Bald Eagle creek. And in pursuance of the terms of its charter, the Bald Eagle Boom Company began the

construction of a boom in 1858. It appears that they placed a number of piers in the bed of the Bald Eagle creek. These piers extended some distance up the creek and a number of them were located in or near the lock and chute of the canal. Now, if the erection of these piers by the Bald Eagle Boom Company was the occasion of the injury complained of by the plaintiffs, then of course they cannot recover damages from the Pennsylvania Canal Company. They must have recourse to the Bald Eagle Boom Company, or if the damages of which they complain resulted from floods or freshets in the stream, and these floods or freshets occasioned the damages, and the splash-boards across the dam or obstructions placed in the chute did not occasion them, the plaintiffs cannot recover any damages from the Pennsylvania Canal Company.

" Now, it is alleged, on the part of the Canal Company, that they are not liable in this action for what is known as consequential damages ; that they had a right under their charter to erect and maintain these splashboards and these obstructions in the chute, and that they would only be liable in this action for property which might have been taken by them in erecting and maintaining these obstructions on the dam. This was the rule in relation to corporations under the constitution of 1838. Under that constitution, the words of which were that ' private property shall not be taken and applied to public use without just compensation being made.' A construction was placed upon these words by the Supreme Court. They have said it must be the actual seizure and taking of property in order to render a corporation liable unless the corporation is subject to liability for consequential damages under its charter. But since the adoption of the constitution of 1874 the rule in regard to corporations being liable for consequential damages has been abrogated and annulled, as appears by reference to the case of Althouse v. The City of Reading, 93 Pa. 400, and also the case of Pusey v. The City of Allegheny, 98 Pa. 522. The Supreme Court held in those cases that the old rule in regard to consequential damages had been abrogated by the new constitution. And in the latter case Justice GORDON, in delivering the opinion, says, ' that it is now idle to recur to decisions and legislation, the authority of which, as to all present and future cases is, by this provision, annulled.' Un-

der the new constitution, municipal, as well as other corporations in this state who are invested with the privilege of taking private property for public use, are required to make just compensation for the property taken, injured or destroyed. Now, the word 'injured' has reference to consequential damages, so that, under the new constitution, where the property of an individual is injured he has a remedy against the corporation for all consequential damages. In this case, if the plaintiffs have suffered damages by reason of the exercise of the powers granted by the legislature to this defendant corporation, it would be liable in this form of action for consequential damages, unless the jury ascertain and determine from the evidence that it has acquired a prescriptive right to the use of the splashboards and the timbers across the chute. A prescriptive right is where one has openly, uninterruptedly and adversely exercised the right for a period of 20 years without that right being assailed, questioned or remonstrated against by a party whose rights are affected by the exercise of such right. So that in this case, if the evidence shows that the Pennsylvania Canal Company has exercised the right of placing the splashboards on the dam and the timbers across the chute continuously for a period of 20 years, with a view to a permanent obstruction in that stream, then the Pennsylvania Canal Company would have acquired the right to raise the water as against these plaintiffs and it would not be liable to respond in damages. Therefore it is important for the jury to ascertain and determine from the evidence whether this right was exercised by the Canal Company from 1839 down to the time of the institution of this suit in 1882, or for a period of 20 years prior to the institution of the suit.

" If the splashboards were placed upon the dam and the obstructions in the chute only temporarily during the time of low water and did not remain there permanently, although they may have used the splashboards and obstructions in the chute for a period of 20 years prior to the time that their right was questioned by these plaintiffs, it would not give them a prescriptive right to maintain these splashboards on the dam and place the obstructions in the chute, and the plaintiffs could maintain this action. But if the splashboards on the dam and the obstructions in the chute were put there from year to year

with a view to their being a permanent structure, and were so used and employed by the Canal Company for a period of 20 years, then the defendant would have the right to maintain the splashboards and keep the timbers across the chute and not be liable to respond in damages to the plaintiffs, because it would have been their duty during the time that this right was running to have protested or remonstrated against it. So that the whole question depends on what view the jury take of the evidence in regard to these splashboards. If they were placed there merely temporarily and not with a view of their becoming a permanent part of the dam, then the defendant did not acquire a prescriptive right, even though they may have used them for a period of twenty years, and the defendant would be liable to respond in damages, if the jury should find that the damages complained of were occasioned by the splashboards and the chute being obstructed. And that brings us to a consideration of the evidence adduced on the part of the plaintiffs for the purpose of showing that the damages were occasioned by the placing of the splashboards on the dam and the obstructions in the chute. The principal amount of damages claimed by the plaintiffs occurred in 1881, at the time when, as Mr. Fredericks alleges, some twelve acres of wheat, two acres of tobacco, thirty-five acres of grass and I think six acres of corn were destroyed. The flood of 1881 occurred when Mr. Cryder was a tenant of Mr. Fredericks and he has detailed on the stand what amount of damages were occasioned by the overflow during that year. He states that the water began to rise in the morning of the 5th or 6th of June. That he discovered water rising in the morning, that he went over to the bank of the creek and when he reached the bank he discovered the water was within six inches of coming on to Mr. Fredericks' farm. That he went from there to the dam to ascertain the condition of the water at the breast of the dam. That when he arrived there the water was running over the dam. He did not notice whether the splashboards were on or not, because the water was running over the dam and he thought it was running about six inches over the splashboards. He stated that afterwards the water began rising and that it covered the farm of Mr. Fredericks about four feet deep. He also stated that the water came in on Mr. Fredericks' farm from above.

Now, gentlemen of the jury, it is but fair for us to say to you that if the flood of 1881 was not caused by the splashboards on the dam or the obstructions in the chute, that is, if the water was not thrown on to Mr. Fredericks' farm by reason of being dammed back by the splashboards and the obstructions in the chute, the plaintiffs are not entitled to recover, no matter what amount of damages were sustained by reason of the flood of 1881. For if the water was running over the dam and did not come on to Mr. Fredericks' farm by six inches, according to the testimony of Mr. Cryder, then it would be utterly impossible that the splashboards on the dam and the obstructions in the chute could have occasioned the overflow. We also have the testimony of Theodore Myers, who states that he went up to the canal at the time this flood occurred in 1881, and that when he got up on the breast of the dam the splashboards had gone off and the obstructions in the chute had been washed out. So that as to these items of damages it will be for you to determine, under the testimony of Mr. Fredericks, Mr. Cryder and Theodore Myers, whether these items of damages which Mr. Fredericks claims for the flood of 1881 were caused by the splashboards on the dam and the obstructions in the chute or whether it was the result of a large flood in the creek. For if the freshet in the creek was a high freshet and the water ran on to Mr. Fredericks' farm, regardless of the splashboards and obstructions in the chute, of course the Canal Company could not be held liable in damages. Then as to the damages in 1879, you have heard the testimony of Mr. Cryder and Mr. Fredericks ás to them, and also as to the washings that occurred on the farm during the time that the Canal Company have operated the canal, and it will be for you to determine whether or not the obstructions on the dam and in the chute produced these overflows. If they did, then the Canal Company would be liable to respond in damages. If they did not, but were produced by other causes, by reason of the boom being in the creek or by extraordinary floods, then the Canal Company could not be held liable.

" Now, gentlemen of the jury, the testimony in this case is submitted to you for your careful and candid consideration. We have given you all the instruction we deem necessary in order to enable you to arrive at a fair and honest conclusion.

If these plaintiffs have sustained damages and the Canal Company caused them, then they are entitled to recover damages for the loss they have sustained. If, however, you come to the conclusion the damages were occasioned by other causes than the erection of these splashboards on the dam and the obstructions in the chute, then the plaintiffs are not entitled to recover. The fact that this defendant is a corporation has nothing to do with the question at issue before you. A corporation is composed of an aggregation of individuals, and when you take money away from a corporation unjustly you take it out of the pockets of the stockholders who have contributed their money towards the corporation. And it would be an unjust verdict if the jury were to determine that because a party to a suit is a corporation that therefore it should be mulcted in damages."

Verdict for plaintiffs for $800, subsequently reduced by remittitur to $600, for which amount judgment was entered. Defendant appealed.

*Errors assigned* were, (1) allowing the amendment of the narr ; (2–16) portions of the charge and answers to points.

*T. C. Hipple*, for appellant.

*H. T. Harvey*, for appellees.

PER CURIAM, March 28, 1892:

We do not think the amended narr of Aug. 31, 1888, introduced a new cause of action. It was a mere restatement, in a more distinct form, of the original cause of action. It was not error, therefore, to allow this amendment to be filed.

It must be conceded that if the dam at the time of the commencement of this suit was in the same condition that it was when it was originally constructed, the plaintiffs would have had no cause of action. The plaintiffs' contention was that it had been raised by the use of permanent splashboards, by means of which the plaintiffs' land had been overflowed, and their crops injured. If the dam had been raised, as alleged by plaintiffs, it would amount to an enlargement of the same within the meaning of the present constitution, which abolished the old rule in regard to consequential damages, and established one more in accord with justice. Sec. 8, art. XVI, of that instrument declares that : " Municipal and other corporations

and individuals vested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." Hence, if the defendants have enlarged their works, i. e., raised their dam so as to cause a greater flow of water upon the plaintiffs' land than when said dam was originally constructed, the defendants would be liable for any damages caused by such increased flow. Whether the dam had been so raised was an important question of fact, and it was properly submitted to the jury. The defendants contended, and introduced some evidence to show, that splashboards were originally placed upon the dam. The answer to this was that, if so placed, they were temporary in their character, were designed for a temporary purpose, and were invariably swept away by high water. The plaintiffs further contended that the present splashboards were of a permanent character, were intended for a permanent purpose, and the effect was to permanently raise the dam. All this was fairly submitted to the jury. An examination of the numerous specifications fails to disclose error.

Judgment affirmed.