# Morgan *v.* Westmoreland Electric Company, Appellant.

213
30 SC ³429
213
f 31 SC ³305
151
151

*Negligence—Electric light company—Exposed wire—Pleadings—Constructive notice.*

In an action against an electric light company to recover damages for death of plaintiff's son, the statement charged that defendant maintained and operated two lines of wires extending from its main line to the cross arms of a pole which sustained a number of telephone wires; and that it "negligently and carelessly allowed and permitted said two wires without proper insulation to be placed on a cross arm of said pole thereby charging said arm and braces attached with a powerful current of electricity." The case was tried upon the theory that the placing of the wire on the cross arm was a part of the construction. *Held*, (1) that the averment gave notice to the defendant that the plan of construction was brought into question; (2) that if there was doubt as to the sufficiency of the averment, it was too late to raise it after a trial on the merits.

In an action against an electric light company to recover damages for

death caused by an exposed wire, there was evidence tending to show that the manner in which the electric wires were carried through a network of telephone wires was faulty, and that the wire alleged to have caused the injury had been in use a number of years, and had sagged, and that its insulation had worn off. The court charged that with respect to faulty construction, notice was unnecessary since the defendant must be held to have notice of what it had designedly done; and with respect to a defective state of repair, it must be held to know that which supervision reasonably exercised would have disclosed. *Held*, that the instruction was correct.

In an action against an electric light company to recover damages for the death of plaintiff's son, an employee of a telephone company, it appeared that the defendant for a consideration permitted the telephone company to string a large number of telephone wires on one of its poles. The telephone wires were in themselves harmless, and death by electricity could have been caused only by the deceased coming into contact with some object charged with a powerful current. It appeared that there were eleven cross arms, and that the electric light wires were attached to the faces of the seventh and eighth cross arms. Under the cross arms were iron braces. The covering of the electric light wire on the seventh cross arm was worn off at its point of contact with an iron bolt which passed through a brace. It was customary for persons inspecting the wires to use the braces as an aid in climbing and as supports. The deceased while engaged in the duty of inspecting, was killed by an electric shock, and his body was found on the wires supported by the fifth cross arm. . There was no direct evidence that the deceased was killed by coming into contact with the charged iron brace, but the position of his body indicated that he had been above the fifth cross arm and in close proximity to the brace of the seventh cross arm. *Held*, that the evidence was sufficient to sustain the finding of the jury that the death was caused by contact with the charged iron brace.

Argued Oct. 10, 1905. Appeal, No. 5, Oct. T., 1905, by defendant, from judgment of C. P. Westmoreland Co., Feb. T., 1904, No. 366, on verdict for plaintiff in case of Elizabeth Morgan v. Westmoreland Electric Company. Before MITCH-ELL, C. J, FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's son. Before McCONNELL, J.

At the trial it appeared that the plaintiff's son, William G. Morgan, met his death on September 16, 1903, while inspecting telephone wires for his employer, the Westmoreland Telephone Company.

The circumstances connected with the accident are stated in the opinion of the Supreme Court.

The court charged in part as follows :

[The manner of conducting the current through between the strands of the telephone company's wires and along the cross arm on which they are supported has been referred to and you must determine, by an application of the test that we have given you, whether such construction is faulty. If faulty and defective, and by reason of that fault and defect, the plaintiff's decedent has been injured—if that has been the proximate cause of the plaintiff's injury, then there would be a right to recover. . . . . In so far as construction is concerned the defendant company needs no notice. Having itself constructed it, it has all the notice that is necessary.] [1]

Defendant presented these points :

2. Even if the jury should find that these two electric wires or either of them were defectively insulated, the defendant would not, on that account, be liable for the death of plaintiff's decedent, there being no evidence that the defendant had notice of the defective insulation, and no evidence as to the cause of the defect. *Answer :* We have already spoken at some length on that point in the general charge. The question referred to in this point cannot with propriety be disposed of as a question of law by the court. There is evidence respecting the manner in which the wires were carried through on the cross arms which tends to show the mode adopted from the beginning to have been faulty in construction. With respect to such faulty construction, if it exists, no notice is necessary. With respect to the wires being in a defective state of repair notice is necessary, but it may be constructive as well as direct. There is testimony bearing on the ordinary life of insulation and also on the length of time these wires had been in use. There is testimony tending to show that the wire had sagged from its proper position and that the insulation was worn off at the point of contact with the carriage bolt. If the insulation was in fact removed by erosion, the consideration of the question of the duration of time while that process was going on is not irrelevant. There is evidence that several years before a wire on the upper cross arm, when it had become displaced, caused a lineman to receive a shock. Although that specific displacement of the other wire was at once remedied and did not exist at the time of the accident, yet it may be considered specific

notice of the danger attending a displacement of the wire and an admonition with respect to the thoroughness with which inspection should be maintained. The high voltage of the current is also an admonition with respect to what thoroughness of inspection is due. The defendant may be held responsible for defects in the state of repair of its appliances of which it has express notice and also for accidents arising from defects which this supervision, reasonably exercised, would have disclosed. Whether there was a long or a short period of displacement of the wire and wearing of the insulation which an ordinary diligent examination exacted by the circumstances would have disclosed, is a question for the jury, especially when we consider the nature of the inspection which the defendant company's testimony shows was made. The question of notice seems to us to be one not to be disposed of as a question of law by the court and the point is therefore refused.] [2]

6. Under all the evidence in this case and under the pleadings, your verdict must be for the defendant. *Answer :* This point is refused for the reasons that are already indicated. [3]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*John B. Head*, with him *D. S. Atkinson*, *W. C. Peoples* and *J. S. Moorhead*, for appellant, cited : Savitz v. R. R. Co., 199 Pa. 218 ; Rotsell v. Warren Borough, 10 Pa. Superior Ct. 283 ; McGinnis v. Kerr, 204 Pa. 615.

*Curtis H. Gregg* with him *Sidney J. Potts*, for appellee, cited: Quigley v. Penna. R. R. Co., 210 Pa. 162 ; Suburban Electric Light Co. v. Nugent, 34 Atl. Repr. 1069; Rauch v. Smedley, 208 Pa. 175 ; McCafferty v. Penna. R. R. Co., 193 Pa. 339; Devlin v. Beacon Light Co., 198 Pa. 583 ; Illingsworth v. Boston Electric Light Co., 161 Mass. 583 (37 N. E. Repr. 778) ; Dwyer v. Buffalo General Electric Co., 20 App. Div. 124 (46 N. Y. Supp. 874).

OPINION BY MR. JUSTICE FELL, January 2, 1906 :

Three questions are presented by the specifications of error : 1. Did the issue raised by the pleadings include the subject of the original construction of the appellant's lines of electric

light wires? 2. Was there sufficient evidence of constructive notice of defective insulation to sustain a recovery on the ground of failure to maintain the wires in a safe condition? 3. Did the evidence warrant the conclusion that defective insulation of one of the wires was the proximate cause of the accident?

It is averred in the declaration that the appellant owned, maintained and operated two lines of wires extending from its main line to the cross arms of a pole which sustained a number of telephone wires; that, not regarding its duty to maintain these wires in a safe condition, it " negligently and carelessly allowed and permitted said two wires without proper insulation to be placed on a cross arm of said pole, thereby charging said arm and braces attached with a powerful current of electricity." The placing of the wire on the cross arm was a part of the construction, and the averment gave notice to the appellant that the plan of construction was brought into question. The case was tried upon this theory. Testimony as to the construction as it existed at the time of the accident was admitted without objection that it did not support the declaration, and affirmative evidence was introduced by the appellant to show the plan of original construction. If there is doubt as to the sufficiency of the averment, it is too late to raise it after a trial on the merits, in which the question was treated by both parties as a part of the issue.

On the question of constructive notice the instruction was that with respect to faulty construction notice was unnecessary since the appellant must be held to have notice of what it had designedly done; and with respect to a defective state of repair, it must be held to know that which supervision reasonably exercised would have disclosed. This instruction was correct. It was called for because there was evidence tending to show that the manner in which the electric wires were carried through a network of telephone wires was faulty, and that the wire alleged to have caused the injury had been in use a number of years and had sagged and that its insulation had worn off.

The main contention of the appellant is that there was not sufficient evidence of any negligent act that was the proximate cause of the accident to warrant the submission of the case to

the jury.   It appears from the evidence that the appellant permitted for a consideration a telephone company to use one of its poles.   On this pole there were eleven cross arms, which supported 130 telephone wires.   The cross arms were twenty-two inches apart, and each one was supported by iron braces which extended down the pole to within a few inches of the next lower arm.   The appellant's electric light wires were attached to the faces of the seventh and eighth cross arms, and extended across the lines of telephone wires.   They were held in place at the cross arms by the use of porcelain knobs, and their insulation was by cotton covering ordinarily used for inside wiring.   These wires had been in use seven years, and the covering of the wire on the seventh cross arm was worn off at its point of contact with an iron bolt which passed through a brace.   It was customary for persons climbing among the wires for the purpose of inspecting or repairing them to use the braces as an aid in climbing and as supports.   The appellee's son was in the employ of the telephone company and was last seen alive when at about the fifth cross arm.   He was killed by an electric shock, and his body was found on the wires supported by this cross arm.   Evidently he had been above these wires or his body would not have fallen on them, and when above them he would have been in close proximity to the brace of the seventh cross arm, which was charged with electricity, and its position was such that he probably would have grasped it in climbing.

There was no direct evidence that the deceased was killed by coming into contact with the iron brace.   But direct evidence was not essential.   The cause of death might properly be inferred from the location of his body with relation to the dangers to which he was exposed.   The telephone wires were in themselves harmless, and death by electricity could have been caused only by the deceased coming into contact with some object charged with a powerful current.   This object was at hand in a position where any one climbing the pole would be likely to touch it.   Conditions were shown to exist which indicated very clearly the cause of death, and no other cause being shown the jury were warranted in finding that this was the cause.

The judgment is affirmed.