Pitcairn et al. *v.* Stuart et al., Appellants.

500

Argued January 5, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Aaron S. Swartz, Jr.,* with him *William A. Schnader,* Attorney General, *Roscoe R. Koch,* Deputy Attorney General, *John M. Dettra* and *Samuel H. High,* for appellant.—The Commonwealth has the power to change the grade of a state highway in a borough.

The Act of May 7, 1929, P. L. 1596, controls this case: State Highway Route No. 72, 71 Pa. Superior Ct. 85; Wangner v. County, 82 Pa. Superior Ct. 448; Fetherolf's Petition, 84 Pa. Superior Ct. 514.

The Act of May 16, 1929, P. L. 1775, amending section 10 of the Highway Act of 1911, also gives the Commonwealth the power to change the grade of a state highway in a borough.

The chancellor, having found plaintiffs guilty of laches, should not have granted a mandatory injunction: Stewart Wire Co. v. Navigation Co., 203 Pa. 474; Orne v. Fridenberg, 143 Pa. 487; Ebert v. Kaufmann, 41 Pa. Superior Ct. 491; Hohl v. Modell, 264 Pa. 516.

*Randolph W. Childs,* with him *K. C. Acton* and *Paul Van Reed Miller,* for appellees.—The secretary of highways does not have the power to change the grade of a state highway in a borough without the consent of the borough.

The Act of May 7, 1929, P. L. 1596, does not confer the right to change the grade of highways in boroughs: State Highway Route No. 72, 71 Pa. Superior Ct. 85.

The Act of May 16, 1929, P. L. 1775, gives the secretary no power to change the grade of a state highway in a borough.

OPINION BY MR. JUSTICE SIMPSON, January 26, 1931:

For a distance of 4,606 feet, the center line of State Highway Route No. 362 is the division line between the Borough of Bryn Athyn and the Township of Lower Moreland. Desiring to modernize the road, the State asked municipal consent to its changing the grade in a way which the court below found was "necessary for the convenience and safety of the traveling public." The commissioners of Montgomery County consented but the borough did not, probably because, if it had, it would have been required to pay its proportion of the expense of the improvement. Claiming that, without such consent, it had the power, under sections 1 and 2 of the Act of May 7, 1929, P. L. 1596, and the Act of May 16, 1929, P. L. 1775, to improve the road, including therein the projected change of grade, the State proceeded with the work, had completed all the grading,—the alteration of which was the only matter at any time complained of by plaintiffs,—and had concreted 3,156 feet of the 4,606 feet along the borough front, when the present bill in equity was filed against the secretary of highways, and the contractor who was doing the work, denying the State's right to alter the grade without the consent of the borough, alleging that such change would injure their properties, and praying an injunction against proceeding with the work or making any payments to the contractor. The borough did not join in the proceeding or file a bill of its own. Defendants answered, asserting authority under the statutes above referred to, and claiming also that plaintiffs had lost all right to relief in equity because of their laches. The court below de-

cided that the State had no power to change the grade in the borough without its consent, and that plaintiffs were guilty of laches, but decreed "that a mandatory injunction issue, directed to the defendants, requiring them to [rechange] the grade of State Highway 362, wholly or partly within the Borough of Bryn Athyn, and in front of the properties of the plaintiffs, so that said grade will conform to the Franklin plan. The reasonable cost and expense of said change to be paid by Raymond Pitcairn [one of plaintiffs], who shall also pay the costs of this case. Nothing in this decree shall pertain to any portion of Route 362, upon which the concrete was laid at the time of filing this bill."

The Franklin plan, above referred to, was a plan prepared for plaintiffs, and the court below said it was "acceptable to the plaintiffs and is equal to that of the highway department, so far as the safety and convenience of the road is concerned," but did not find it to be so in any other respect. The State never accepted nor approved of that plan, and whether or not it should be substituted for the one prepared by the State for the improvement of the road, was a matter for it alone and not for the court. The latter might advise its acceptance, but had no more right to substitute its judgment for that of the executive department, and mandatorily compel the State to comply with that judgment, as the decree appealed from attempted to do, than it would have had the right to compel a change in the width or location of the road. The court's only duty was to inquire whether or not the Commonwealth had the power to do the work in the way specified in its plan, and, if it had not, whether or not plaintiffs had lost all right to complain because of their laches. This is also the limit of our duty, which we will not attempt to transcend.

Upon the question of laches the court below said: "The first and second plaintiffs had direct notice, in the early part of January, that the highway department intended to change the grade of Route 362 in front of

their properties, and there is a strong inference that, by reason of the relationship of the parties, the third plaintiff also had such notice. The plaintiffs had a copy of the plan showing the change of grade and they had direct knowledge, as early as April 3, 1930, that the State intended to carry out this plan, for on that day the contractor commenced the actual work of grading the road. Despite this, they stood by until the grading was practically [in fact entirely] completed, and over two-thirds of the concrete laid, before attempting to assert their legal rights. Under the circumstances, this delay of nearly two months is sufficient to convict them of such laches as will defeat their right to relief, unless they can offer some sufficient excuse for their lack of diligence. True, the principal plaintiff, Raymond Pitcairn, was in negotiation with the officials of the department of highways, and some concessions were made to his views, both by the department and the contractor. Without going into detail, it may be said that the conduct of Mr. Pitcairn indicated an implied consent to the change of grade, rather than determined opposition. That the plaintiffs fully recognize their guilt of laches, is shown by the fact that Mr. Pitcairn definitely offered, on the stand, to pay any expense made necessary by restoring the uncompleted portion of the road to the original grade. Again, under the circumstances, this is a sufficient answer to the charge of laches, so far as the defendants are concerned. Other parties, however, have acquired an interest in this controversy, which must be recognized, namely, the traveling public. It is conceded that the change of grade in Route 362, through Bryn Athyn, makes for the increased safety and convenience of the road. The public, then, is an interested party, whose rights must be taken into consideration: Traphagen v. Jersey City, 29 N. J. Equity Rep. 650."

Plaintiffs did not file any exception to the findings of fact from which the conclusion of laches necessarily results, and hence, in later proceedings in the case, will

be considered to have waived all objections to them: Equity Rule 69. If it had been challenged, however, we would have sustained the conclusion of the court below on this point. In Edwards v. Western Maryland Ry. Co., 268 Pa. 228, 230, quoted and approved in Kinter v. Commonwealth Trust Co., 274 Pa. 436, 443, we said: "The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding." In the instant case, plaintiffs knew of the proposed changes in the grade between three and four months before the work was begun, and saw it being done from the time it was commenced, yet gave no notice that they intended to oppose its completion, until all the grading and more than two-thirds of the concreting had been done.

We cannot agree, however, with the conclusion of the court below that the offer of one of the plaintiffs "to pay any expenses made necessary by restoring the uncompleted portion of the road to the original grade..... [or to that specified in the Franklin plan] is a sufficient answer to the charge of laches." Even if plaintiffs could be permitted to escape the effect of their laches by giving a money consideration, they could do no less than pay also the cost of raising the grade,—an expense probably much in excess of the cost of removing it—for that expense was incurred by reason of their failure to object seasonably. There would also have to be taken into consideration the expense to which the State was put in preparing for the doing of the work and in superintending its performance; for these expenses were also incurred because of the laches of plaintiffs.

But the financial element is not the only one to be considered. As the court below said: "Other parties have acquired an interest in this controversy, which must be recognized, namely, the traveling public." Its

beneficial use of the road was greatly impaired while the grading was being done, and now plaintiffs propose to impair it still longer while that grading is being taken away, each impairment being caused by their failure to act promptly. So far as this record discloses, the traveling public has nothing to gain and everything to lose by restoring the road to the old grade, since, as stated by the court below, the change in grade which the State was making was "necessary for the convenience and safety of the traveling public." Where such safety is concerned, the element of time is vital, as it is also where a grade is being changed, for this introduces an element of danger while the work is being done; yet it is now proposed to waive plaintiffs' laches by removing an existing convenient and safe grade and substituting for it one which is inconvenient and unsafe, without any advantage whatever to the traveling public, the elements of inconvenience and danger necessarily resulting therefrom continuing during the doing of the work. All these things are against equity, and equity must hold, therefore, that plaintiffs' offer to pay a relatively small proportion of the costs does not meet the exigency of the case, and hence is not "a sufficient answer to the charge of laches," justly established against them.

What has been said obviates the necessity for considering the other questions attempted to be raised; but it may be added that it is at least gravely doubtful whether either of the Acts of 1929, supra, give to the Commonwealth the power which it claims in this proceeding.

The decree of the court below is reversed and plaintiffs' bill in equity is dismissed at their costs.