## Pennsylvania Railroad Company *v.* Pittsburgh, Appellant.

450

Argued March 24, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, and STERN, JJ.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Wm. Alvah Stewart,* City Solicitor, for appellant.

*Wm. S. Moorhead,* of *Moorhead & Knox,* with him *Dalzell, McFall & Pringle,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 19, 1939:

Appellee brought this action of trespass for damages caused by slides of earth which covered its tracks and

yards in the vicinity of 26th Street and Bigelow Boulevard, in the City of Pittsburgh. Grant, now Bigelow Boulevard, was constructed in 1898 on the face of a steep hill at the base of which appellee's tracks were located, approximately 250 feet perpendicularly below, and 450 feet surface-measurement from, the boulevard. A large ravine, known as Jones Hollow, occupied the intervening space, and the boulevard passed over it. This was done partly by cutting into the side of the hill and partly by a fill. In the original filling operations in 1898 and 1899, earth and stone slipped downward from the boulevard, spreading over properties in the Hollow. Further filling was enjoined until the land in the Hollow was purchased by the City, and a large retaining wall of masonry, 60 feet high, 15 to 22½ feet thick, and 140 feet long, was erected south of appellee's property to withhold any movement of the fill. Between it and the boulevard a timber crib was built across the Hollow, and French drains were constructed by appellant near the base of the hill to take off percolating and subterranean water.

From 1900 to 1920, 75,000 cubic yards of additional fill were gradually deposited in the Hollow. Pilings were placed on Jones Avenue in 1905, but another slip occurred in that vicinity the following year. In 1919 an ordinance of the City Council authorized the widening and improvement of Bigelow Boulevard in this location. Two contracts were awarded and the work started in 1920. In the course of it, 20,000 additional cubic yards of earth were deposited on the fill in the Hollow west of Jones Avenue and the Boulevard, and 13,300 cubic yards east of that intersection. A terracotta sewer pipe located under Jones Avenue, broke, saturating the filled ground. On September 22, 1920, large cracks appeared on the surface of Jones Avenue and a portion of that street subsided. Appellant's engineers were notified, and emergency operations to divert the sewage were begun. On September 28th, the entire

fill in Jones Hollow was discovered to be in motion, and cracks appeared in the masonry retaining wall. Notwithstanding the notice given appellant of the movement of the fill, the contractors continued dumping in the Hollow, pursuant to their contracts. Large quantities of earth slid over and around the retaining wall, which had been forced outward, onto the tracks and yards of appellee. Appellee's "Car Wash Building," was in the direct path of the slide and was demolished. The slide continued, until the earth at its head had reached a height of approximately 55 feet on appellee's property, covering two main passenger tracks, and several tracks in the yards. Traffic was diverted by appellee and emergency crews were rushed to the scene. Steam shovels, cranes, ditching machines, a derrick, and hundreds of trains were used to remove this great accumulation of 178,860 cubic yards of earth. The main tracks were opened December 5th. The slide temporarily stopped, but resumed motion on June 27, 1921, and again the property of appellee was covered by approximately 35,000 cubic yards of earth, the removal of which occupied appellee's emergency forces until August.

On June 20, 1923, appellee issued its summons in trespass, and subsequently the case was listed to be tried in 1924. When it was called, appellant requested a continuance, to which appellee agreed. It was again listed in November, 1924. The parties discussed settlement in 1925, but reached no agreement. In November of that year, the case was again called, and again placed on the deferred list at appellant's request, with the stipulation that it be put down for trial "later at some convenient time." On October 14, 1926, appellant filed its affidavit of defense with a counterclaim. Appellee promptly filed a demurrer to the counterclaim which was sustained. Nothing further was done until April 12, 1935, when the case was placed upon the trial list by appellee. During this interval there had been

some negotiations between the parties regarding this case and other matters of litigation, but no attempts at settlement were made.

The case was called for trial early in 1936, but was deferred for special listing. On May 4, 1936, the case was discussed with William B. Secrist, newly appointed city solicitor, who asked time to familiarize himself with the facts. On June 22nd, he executed a stipulation for trial during the week of November 2, 1936. City Solicitor Secrist died in August. The new city solicitor, Gregory Zatkovich, appointed September 4, 1936, entered into a stipulation for an extension to January 18, 1937. On November 6, 1936, his successor filed a petition and rule for judgment of non pros. This was dismissed by the court en banc on December 27, 1937. An appeal to the Supreme Court was quashed on January 12, 1938. In February appellant petitioned the court below for reargument, which was refused.

The case was brought to trial May 2, 1938, when the court dismissed a renewed motion for non pros. The jury returned a verdict for appellee in the sum of $730,005.05, representing damages for the cost of removing the landslide from its tracks. Although additional damages in the form of detention money for the delay were asked by appellee, the jury specifically excluded this item from the verdict. Appellant moved for judgment n. o. v. and a new trial. From the refusal of these motions this appeal was taken.

The first question to be considered is the action of the court below in dismissing appellant's motion for a non pros. It is urged that the delay of more than eight years from the action on the counterclaim to the listing of the case for trial on April 12, 1935, and the subsequent delay of approximately three years before the case was heard, constitute laches on the part of appellee. The court en banc fully considered this aspect of the case and, under our decisions, the conclusion reached cannot be disturbed on this appeal.

The grant or refusal of a non pros. for delay in prosecution is entirely within the discretion of the court to which application is made. See *Wingert et al. v. Anderson et al.*, 309 Pa. 402, 403; *Potter Title & Trust Co. v. Frank et al.*, 298 Pa. 137, 139; *Hillside Coal & Iron Co. v. Heermans*, 191 Pa. 116, 121; *Waring Brothers & Co. v. Pennsylvania R. R. Co.*, 176 Pa. 172, 176. The rule is stated in *Insurance Company v. Clinger*, 10 Pa. Superior Ct. 92, at page 102: "There is no fixed rule as to the length of delay that will prevent plaintiffs proceeding. It is a question of discretion controlled by the facts of the particular case and the decision of the court below will not be reversed unless there is a manifest abuse of discretion."

Furthermore, the right to a non pros. may be waived if there is conduct indicating a willingness on defendant's part to try the case on the merits notwithstanding the delay, or if he is a party to, or causes the delay. In *Potter Title & Trust Co. v. Frank et al.*, 298 Pa. 137, it was said at page 142: "Where the defendant takes steps looking to a trial upon the merits, like filing an answer, entering a plea, or taking a rule on the plaintiff to take some action in the case, it constitutes a waiver of the laches." See also *Munley v. Sugar Notch Boro.*, 215 Pa. 228, 230; *Forrest v. Philadelphia Rapid Transit Co.*, 261 Pa. 383, 389; *Wingert v. Anderson*, 309 Pa. 402, 405; 5 Stand. Pa. Prac., pages 47 to 48. Such a waiver will more clearly appear where defendant permits plaintiff to incur the expenses of preparation for trial before making any complaint. See *Forrest v. Philadelphia Rapid Transit Co.*, 261 Pa. 383, 389; 5 Stand. Pa. Prac., at page 48.

Here, City Solicitors Secrist and Zatkovich, despite the long delay, entered into stipulations in 1936 to list the case for trial. This was conduct "looking to a trial," and constituted a waiver of whatever right the city may have had to take advantage of the delay. Appellant contends that these stipulations do not operate

as a waiver because City Solicitor Secrist was deliberately misinformed by appellee as to the cause of delay, and because he and City Solicitor Zatkovich lacked authority to surrender appellant's right to a non pros. Even if misrepresentations were made to City Solicitor Secrist, there is no evidence that the stipulation was executed in reliance upon them. It is clear that the city solicitor had at his disposal all the necessary records to inform himself of the actual situation. The stipulation was not executed until more than a month after the conference with counsel for appellee. However, subsequently, City Solicitor Zatkovich executed a similar stipulation, and appellant has made no effort to show that he was induced to do so by any misrepresentations.

As to the authority of these officers to bind appellant, little need be said. The city solicitor of Pittsburgh, has, under the Act of March 7, 1901, P. L. 20, Article IX, Section 1, the same power to act for the City in the conduct of litigation as has an attorney for a private individual. Although the power of an attorney does not extend to unauthorized acts which will result in the surrender of any substantial right of a client or the imposition of new liabilities or burdens upon him (*Starling, Executor, v. West Erie B. & L. Assn.*, 333 Pa. 124, 126), he has power to bind his clients by acts in the management of the regular course of litigation. *Lynch v. Commonwealth*, 16 S. & R. 368; *Wilson v. Young*, 9 Pa. 101; *Swartz v. Morgan & Co. et al.*, 163 Pa. 195; *Starling, Executor, v. West Erie B. & L. Assn.*, 333 Pa. 124, 126. It was expressly held in *Munley v. Sugar Notch Boro.*, 215 Pa. 228, at pages 230 to 231, that the law officer of a municipality may waive the right to a non pros. by proceeding to trial on the merits, in the absence of evidence showing that his authority was expressly restricted. The case of *Crist and Haldeman v. Garner et al.*, 2 P. & W. 251, 262, is not analogous. There it was stated that an attorney has no

power to bind his client by a promise to pay a debt barred by the statute of limitations. This is not a matter involved in the ordinary course of litigation, and is clearly beyond the scope of an attorney's apparent authority.

Apart from the stipulations there was sufficient evidence to show at least a mutual understanding that the trial should be deferred. Under all the circumstances, the action of the court below was well within its power in refusing a non pros. The delay from 1935 to 1938 was as much chargeable to the frequent changes in the office of city solicitor, necessitating retracing the work of predecessors, as it was to any lack of diligence on the part of appellee.

The fact that several of appellant's witnesses have died since the institution of the action does not bring this case within the rule expressed in *Wildermuth. v. Phila. & Reading Ry. Co.,* 326 Pa. 536, and *Hruska et al. v. Gibson,* 316 Pa. 518; in neither of those cases had the defendant waived the right to object to the delay, as was done in the present case.

Appellant's next contention is that appellee failed to lay a basis in its pleadings for the proof of negligence, which was the sole issue on the trial of the case, and that this variance between proof and allegation is fatal since it amounted to a change in the cause of action after the running of the statute of limitations.

The rule relative to taking advantage of a variance has been frequently asserted by this Court. Under it, objection must be made (1) when the testimony not covered by the pleadings is offered; (2) by a motion for nonsuit, assigning the divergence as the reason; or (3) by a point for binding instructions in which the reason is assigned. If, however, no objection is made to the testimony, and the specific reason is not assigned on the motion for a nonsuit or in the point for instructions, then the defendant, having taken his chance of a favorable verdict, may not thereafter raise

the question. See *Kehres v. Stuempfle et al.,* 288 Pa. 534, 538. Here the case was tried solely on the issue of negligence. Counsels' failure to object to the introduction of testimony of negligence on this ground, or to properly meet any of the conditions of the rule for asserting a variance, was a waiver of any right to assign it as error. See *Lesick et ux. v. Proctor,* 300 Pa. 347, 349; *Kehres v. Stuempfle et al.,* 288 Pa. 534, 538; *Floyd v. Lehigh Valley R. R. Co.,* 60 Pa. Superior Ct. 1, 3; *Shaffer v. Bahr,* 57 Pa. Superior Ct. 48, 51. In *Morgan v. Electric Company,* 213 Pa. 151, at 155, where, after trial, the admission of certain testimony was objected to on the ground that there was no sufficient foundation laid for it in the pleadings, it was said: "If there is doubt as to the sufficiency of the averment, it is too late to raise it after a trial on the merits, in which the question was treated by both parties as a part of the issue."

The rule against a variance between allegata and probata is not arbitrary, but is based upon the sound reason that a defendant should not be taken by surprise at trial by being called upon to defend against matters of which he had no notice in the pleadings, or to a different cause of action. See *Tarentum Lumber Co. v. Marvin,* 61 Pa. Superior Ct. 294, 297. The trial court cannot be charged with error for submitting the case to the jury on the very issue raised by the defendant and considered at length in the course of the trial. As stated in *Hastings v. Speer,* 34 Pa. Superior Ct. 478, at page 486: ". . . it ought to be very clearly shown that there is some unbending rule which requires it, in order to justify an appellate court in setting aside the verdict, and turning the plaintiff out of court, upon either of the grounds suggested by appellant's counsel, after a fair trial on the merits."

Though the question is not properly before us, we are nevertheless unable to find a material variance, as we construe the pleadings. The cause of action was

stated in paragraphs 9 and 10 of the statement of claim to be the conduct of appellant in causing large quantities of rock, shale and clay to be dumped on the face of the ravine, until the pressure overthrew the retaining wall, and precipitated a slide of earth upon appellee's property. Appellant assumes, from the failure to use the word "negligence" in the description of the dumping operations, that appellee's claim is in trespass quare clausum fregit, and is a separate and distinct cause of action from trespass on the case for negligent injury to land. This is an unwarranted assumption. Under the Act of May 25, 1887, P. L. 271, Section 2, and the Practice Act of May 14, 1915, P. L. 483, Section 1, there is only one action of trespass, embracing all of the former proceedings ex delicto at common law.

Negligence is a legal conclusion, and need not be specifically averred. It is sufficient if facts in the statement are set forth from which a clear, and unmistakable inference of negligence can be drawn. See *Bradly v. Potts,* 155 Pa. 418, 428; 3 Stand. Pa. Prac., at page 142. Appellee stated that as a result of certain operations conducted by appellant upon its property, two extraordinary slides of earth were caused which damaged appellee. The operations were admittedly of such a nature that in their ordinary course no injury would have occurred in the absence of negligence. The slope of the hillside was at a ratio well within the angle of repose for dry earth, which, it was testified, is one-and-a-half to one. Since appellee averred that the operation was under the control of appellant, and injury did result from the manner in which the work was done, the statement of claim might be said to raise an inference of negligence in the operation, within the rule stated in *Shafer v. Lacock, Hawthorn & Co.,* 168 Pa. 497, at 504: " 'When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary

course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care.' " See also *Durning et al. v. Hyman,* 286 Pa. 376, 379; *Knox v. Simmerman,* 301 Pa. 1, 4; *Lesick et ux. v. Proctor,* 300 Pa. 347, 350; *Dei v. Stratigos,* 287 Pa. 475, 477.

There would be no change in the cause of action, therefore, when appellee merely proved the details of the manner in which the filling operation in 1920 was conducted, causing damage to its property. Appellee was entitled to show that the filling operation which caused the pressure on the wall and the overflow of earth upon its tracks was in these respects conducted negligently. In *Knapp v. Hartung,* 73 Pa. 290, it was held that an amendment to a statement of claim in trespass q. c. f. d. b. a., to more fully describe the manner in which the trespass occurred, did not change the cause of action. And see *Erie City Iron Works v. Barber & Co.,* 102 Pa. 156, 163; *Erie City Iron Works v. P. M. Barber et al.,* 118 Pa. 6, 17; *Proper v. Luce,* 3 P. & W. 65; *Smith v. Bellows,* 77 Pa. 441.

But, if there was any deficiency in the statement of claim to afford the basis for proof of negligence, it was completely cured by the affidavit of defense. In paragraphs 10 and 11 appellant specifically denied lack of due care, and the affidavit set up other circumstances that placed negligence in issue. As amended at trial, it specifically raised the question of negligence as to the break in the sewer and asserted that this was the primary cause of the slide. Appellee was free to offer evidence as to the cause of the slides to support its own averments and to rebut these allegations of the affidavit of defense. It is well settled that where a defendant waives the insufficiency of the statement of claim by pleading over, or going to trial on the merits, he cannot thereafter attack it. See *King et al. v. Brillhart,* 271 Pa. 301, 305; *Knox v. Simmerman,* 301 Pa. 1, 5;

*Friedly v. Scheetz,* 9 S. & R. 155, 164. Thus in *Genesee Paper Co. v. Bogert,* 23 Pa. Superior Ct. 23, plaintiff failed to attach to his statement a copy of the agreement in suit. Defendant attached a copy to the affidavit of defense, but later attacked the sufficiency of the statement. It was held that the defect was supplied by the affidavit.

Appellant's only objection to any of the testimony was based, not upon the ground that it was proof of negligence, but on the ground that it involved negligent acts not embraced in the statement of claim. The particular testimony objected to, was that relating to the city's knowledge of the dangerous condition of Jones Hollow from earlier filling operations and slides therein; to the manner of constructing the Boulevard, and to the failure of appellant's engineers, with this knowledge, to make preliminary investigations of the stability of the fill. These objections were predicated solely upon the supposed absence of reference in the statement of claim to any events prior to 1920.

The right of appellee to prove negligence in the 1920 operations was conceded at the trial. This involved proof of the condition of the fill at the time the new operation was undertaken as part of the details of that operation. It was relevant in this connection to introduce evidence of prior slides. If this were a variance, as stated above, appellant would not have been prejudiced because it was not surprised by proof of the condition of the fill from 1898 to 1920, since the affidavit of defense in paragraphs 2, 3, 14, 16, 20 and 23 refers to the nature of the terrain, the previous slides, and the first filling operations. Attached to the affidavit of defense were maps of the slides, showing the topography of the hillside at various periods after the construction of the Boulevard. Considering the allegations in appellee's statement in paragraphs 8, 9 and 10, and the paragraphs of the affidavit referred to, the substance of these objections were brought into the

462

case. It cannot be contended that the city was surprised by this proof of negligence when it raised the issue itself and permitted most of the evidence to be admitted without objection. *Hastings v. Speer,* 34 Pa. Superior Ct. 478, 486; *Hoffman v. Mutual Fire Ins. Co.,* 274 Pa. 292; *Chapman Co. v. Welsh,* 90 Pa. Superior Ct. 225, 229. The evidence was offered on the issues joined, and appellant came prepared to meet and present testimony along these lines. As the court below said, "the City, by its own records, had notice of the existing condition."

Appellant's complaint of that portion of the charge of the court below which permitted recovery even though the jury should find the cause of the slide was not the dumping of earth upon the fill, but the negligence of appellant in failing to repair the broken sewer under Jones Avenue or divert the water therefrom, is without merit. The break in the sewer occurred during the course of the filling operations. The city was bound to know of its presence under the filled surface. The testimony as to the break was part of the details of the manner in which the dumping was done, and there was evidence from which the jury might have inferred that the break was caused by the dumping of earth directly above it. Regardless of the cause of the break, its location and contribution to the hazards of the operation, made it one of the conditions existing at the time the acts complained of were being performed, and cannot be separated from the general description of the filling operations. Unquestionably it was a contributing cause of the slide, and the conduct of appellant with reference to it must be considered part of the operation of widening Grant Boulevard. This testimony was introduced into the case by appellant, to escape liability, and a point for charge was submitted by appellant regarding this question. It cannot complain that appellee submitted evidence of negligent acts with relation to the break, and escaping water and the result

thereof. The court below did not commit error in charging as it did that there could be recovery on that ground alone.

Appellee could have amended its statement of claim to include an averment of negligence with respect to the break in the sewer (see *Fredericks v. Penna. Canal Co.*, 148 Pa. 317; *Raskus v. Allegheny Valley Street Ry. Co.*, 302 Pa. 34, 37), but since this matter was introduced by an amendment to the affidavit of defense it is now too late for appellant to complain that it was taken by surprise or prejudiced by the submission of this feature of the case to the jury. See *Hoffman v. Mutual Fire Ins. Co.*, 274 Pa. 292; *Chapman Co. v. Welsh*, 90 Pa. Superior Ct. 225; *Hastings v. Speer*, 34 Pa. Superior Ct. 478. The same observation may be made with respect to placing additional fill on the hillside after the mass of earth started to move. This evidence was well within the pleading.

Appellee was entitled to recover for the slide of 1921. The slides of 1920 and 1921 are so closely related they may be considered together, though the latter was aggravated by rainfall, a condition which should have been anticipated before a slide occurred, by providing proper drainage.

On the question of damages, prima facie, the measure was the cost of removing the deposits of earth from the tracks of appellee and restoring the premises. *Hoffman v. Coal Co.*, 16 Pa. Superior Ct. 631, 636. Appellant objects, however, that the damages for trespass to land can never exceed the value of the land itself, citing *Titus v. Poland Coal Co.*, 275 Pa. 431, 435. No evidence was offered by appellant at the trial as to the market value of the land in question and no objection was taken to the charge of the court with respect to the measure of damages. The question is not properly raised on this appeal, because it is not included in the assignments of error or questions involved. However, the value of the land would not afford a proper

measure of damages because of the nature of appellee's business, which required it to keep its tracks open as a public necessity. It could not simply abandon the land without great injury to the public and in violation of its charter obligations. In such cases, the proper measure of damages is the actual cost of the removal of the obstruction.

It is unnecessary to consider whether detention money would have been proper under the circumstances, for the verdict of the jury expressly excluded this item.*

Appellant's final objection is that the operations in Jones Hollow were conducted by independent contractors for whose negligence the city is not liable and that the court below should have so charged the jury. Although appellant mentioned this defense in its affidavit, it was abandoned at trial and the issue was not raised. The court below did not err in submitting the case to the jury on the sole issue raised at the trial, which was that of appellant's negligence. As was said in *Hartley v. Decker*, 89 Pa. 470, 473: "A judge who submits a case to the jury in the manner in which it is presented by counsel, ought not to be convicted of error for not presenting it in some other way to which his attention had not been called." Appellant made no request for charge on this point and took no objection to the failure to include it in the charge. The matter was raised for the first time in the motion for a new trial, and it is too late to afford the basis for an assignment of error. The case of *Finkelstein et ux. v. McClain*, 331 Pa. 198, is not in point. But even if the defense had been interposed, there was sufficient evidence of management and control to subject appellant to liability.

Judgment affirmed.

* "... . we the Jurors empannelled in the above entitled case, find verdict in favor of the plaintiff, in the amount of $730,005.05, no allowance being made to the plaintiff for detention money."