Manson, Appellant, *v.* First National Bank in Indiana.

Argued September 29, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*John A. Metz, Jr.,* with him *James W. Mack, Jr.* and *Metz & Metz,* for appellants.

*James L. Jack,* with him *J. Wayne Tomb* and *Tomb & Tomb,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1951:

This is an appeal by plaintiffs from an order and decree of the court below entering judgment of non pros in an action of assumpsit.

The suit was started in August, 1937 by the filing of a praecipe and a statement of claim. The statement set forth alleged facts which may be summarized as follows: In 1936 a petition under the Bankruptcy Act for reorganization of the Penn Indiana Brewing Company was pending in the federal court. There were then four mortgages against the Company's real estate; the first and second were held by one McGregor as nominee of defendant bank, the third was held by defendant itself; and the fourth by a New York finance company. A plan of reorganization was submitted to the creditors dependent upon the raising of additional capital in the sum of $30,000. Plaintiffs were induced to loan this sum to the Brewing Company on the verbal agreement of defendant that it would postpone a certain part of its third mortgage to a new fourth mortgage in the sum of $30,000 to be given by the Company to plaintiffs and which was to take precedence over the existing fourth mortgage; for the part of the third mortgage thus postponed defendant would take a junior lien. Defendant also agreed that in the event of the foreclosure of any of the mortgages, or in the event of bankruptcy or other judicial sale of the property, if plaintiffs should become the successful bidders at the sale defendant would continue in force the two mortgages held by it and would have its nominee McGregor likewise continue the two mortgages held in his name. On the faith of this agreement, which was to be confirmed by letters signed by defendant and McGregor respectively, plaintiffs advanced to the Brewing Company the sum of $30,000. The reorganization plan was approved by the creditors and was put into effect but subsequently the proceedings were reopened, a trustee was appointed, and a sale of the Company's real estate was had. Meanwhile plaintiffs demanded of defendant the promised letters, but defendant announced that it would not deliver the McGregor letter nor would it

carry out its contract to continue the mortgages upon plaintiffs' becoming the successful bidders for the property; the result was that plaintiffs were financially unable to bid in order to protect their loan and the real estate was sold to defendant for $35,000. Plaintiffs thereupon sued to recover the $30,000 which they had loaned to the Company in reliance on defendant's agreement.

Defendant obtained from the court 4 months' extension of time in which to file an affidavit of defense. The case was ordered on the trial list for September, 1938 and again for November, 1938; when then called for trial, and after some testimony had been taken, counsel for defendant contended that the statement of claim should be amended to add two additional persons as plaintiffs to the one originally named, and he moved for the withdrawal of a juror and continuance of the case. The court granted the motion and in March, 1939 an amended statement of claim was filed. The case was listed for trial in April, 1940, but was again continued on defendant's application on the ground that one O'Hare, alleged to be a material witness for defendant, was ill in a hospital, and defendant's counsel admits that he did not at any time thereafter inform plaintiffs' counsel that O'Hare had become available as a witness. In December, 1941 the United States entered the world war and, because of the belief of plaintiffs' counsel that they could not proceed without the testimony of one Sproul, who was in the military service until 1946, no further attempt was made to bring the case to trial until January, 1948, when plaintiffs' counsel conferred with the court and with counsel for defendant in regard to placing the case once more on the trial list. A conference was scheduled for February, 1948, but counsel for defendant then informed plaintiffs' counsel that they intended to file a petition for non pros. In June, 1948 plaintiffs' counsel requested de-

fendant's counsel to meet with the court in regard to fixing a date for the conference. Counsel for defendant thereupon again indicated that they proposed filing a petition for non pros and they did file such petition on August 2, 1948; plaintiffs filed an answer thereto on August 16, 1948, but hearing was not had thereon until May 3, 1949; the court handed down its opinion and entered judgment of non pros on November 30, 1949.

It has been repeatedly declared that the question of granting a non pros on account of a plaintiff's laches is addressed to the discretion of the trial court, with which discretion, unless abused, an appellate court will not interfere: *Potter Title & Trust Co., Administrator, v. Frank,* 298 Pa. 137, 148 A. 50; *Pennsylvania R. R. Co. v. Pittsburgh,* 335 Pa. 449, 6 A. 2d 907; *Margolis v. Blecher,* 364 Pa. 234, 72 A. 2d 127; *Geyer v. Walton,* 151 Pa. Superior Ct. 549, 30 A. 2d 643. But we are unanimously of opinion that under the circumstances of the present case the court below did abuse its discretionary power.

The principles governing the entry of a judgment of non pros for failure on the part of the plaintiff diligently to prosecute his case are well established. There is no fixed rule as to the length of delay that will bar him from proceeding: *Pennsylvania R. R. Co. v. Pittsburgh,* 335 Pa. 449, 455 6 A. 2d 907, 911; *Susquehanna Mutual Fire Insurance Co. v. Clinger,* 10 Pa. Superior Ct. 92, 102; *Geyer v. Walton,* 151 Pa. Superior Ct. 549, 552, 30 A. 2d 643, 644. The question of laches does not depend, as does the statute of limitations, upon the fact that a certain time has elapsed since the cause of action accrued, but whether, under all the facts and circumstances of the particular case, the plaintiff is chargeable with want of due diligence in failing to proceed with reasonable promptitude: *Edwards v. Western Maryland Rwy. Co.,* 268 Pa. 228, 111 A.

250; *Kinter v. Commonwealth Trust Co., Executor,* 274 Pa. 436, 443, 118 A. 392, 394; *Commonwealth, ex rel. v. Kelly,* 287 Pa. 139, 150, 134 A. 514, 518; *Fidelity-Philadelphia Trust Co. v. Simpson,* 293 Pa. 577, 585, 143 A. 202, 204; *Potter Title & Trust Co., Administrator, v. Frank,* 298 Pa. 137, 141, 148 A. 50, 52; *Pitcairn v. Stuart,* 302 Pa. 499, 505, 153 A. 896, 897; *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 157, 53 A. 2d 143, 150; *Cronauer v. Bayer,* 140 Pa. Superior Ct. 91, 95, 13 A. 2d 75, 77. Nor will the plaintiff be penalized for laches if his delay has not resulted in injury to his adversary: *Montgomery Brothers, Inc. v. Montgomery,* 269 Pa. 332, 112 A. 474; *Selmer v. Smith,* 285 Pa. 67, 70, 131 A. 663, 665; *Quinn v. American Spiral Spring & Manufacturing Co.,* 293 Pa. 152, 160, 141 A. 855, 858; *Potter Title & Trust Co., Administrator, v. Frank,* 298 Pa. 137, 141, 148 A. 50, 52; *Schireson v. Shafer,* 354 Pa. 458, 463, 47 A. 2d 665, 668; *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 157, 53 A. 2d 143, 150; *Joseph Melnick Building & Loan Association v. Melnick,* 361 Pa. 328, 339, 64 A. 2d 773, 778; *Blackburn v. Youghiogheny & Ohio Coal Co. of Pennsylvania,* 110 Pa. Superior Ct. 552, 561, 168 A. 351, 354; *DeHart v. Bush & Bush,* 112 Pa. Superior Ct. 589, 593, 172 A. 18, 20.

It might be sufficient to rest the decision in the present case upon the last stated principle, namely, that delay will not be held against a plaintiff if no damage results therefrom to the defendant. It is true that defendant here claims that it has been harmed by reason of the fact that four witnesses whom it would have produced at the trial have died since the institution of the suit; one of these was O'Hare, because of whose illness defendant secured a continuance in 1940 and who died in 1942; the others were McGregor, one Richards and one Myers. Richards died in 1941, McGregor in 1942, and Myers in 1947. It is clear, however, that any delays that occurred in the progress of the

action before the end of 1942 were occasioned, not by plaintiffs, but rather by defendant itself, which obtained not only extensions of time for the filing of its affidavit of defense but also two continuances of the trial. If, therefore, there was any reprehensible delay on the part of plaintiffs it did not start until *after* the death of at least three of these persons. Moreover, the testimony of none of these witnesses would apparently have been relevant or admissible because they were intended for use at the trial solely in regard to the question of the value and condition of the brewery's property—a question which does not seem to have been in issue in the controversy. As far as McGregor is concerned, it was admitted by defendant that he did not take part in any of the negotiations between the parties and that any information he possessed he obtained only by hearsay.

There is considerable merit in plaintiffs' claim that the war was responsible for much of their delay. For several years during its course Sproul, who had been the trustee in the reorganization proceedings and who, it is alleged, had participated in the transactions between plaintiffs and defendant, was in Africa or other remote places abroad. Defendant argues that plaintiffs could have taken Sproul's depositions, but that was no doubt problematical. Plaintiffs point out that because of war conditions there were so few cases tried in Indiana County during the war period that civil jury trials were conducted there in only four weeks of the entire five years from 1942 to 1947, and undoubtedly during that period great numbers of cases were allowed to lie fallow in all the counties of the Commonwealth. It also appears that much of the delay in the present instance was due, not to plaintiffs themselves, but to the procrastination of their counsel,—a fault not wholly uncommon, perhaps, in the legal profession. The theory on which a non pros is entered is

that, owing to the lapse of time, the plaintiff has presumably abandoned the action, but in the present case it appears that plaintiffs were extremely eager to proceed with the suit and from time to time kept bombarding their counsel with inquiries as to why the proceedings were allowed to lag. While, generally speaking, a litigant is bound by the actions or inactions of his counsel, there is authority for the proposition that when a plaintiff places his case in the hands of reputable counsel he will not be turned out of court if the delay complained of was almost entirely on account of neglect or oversight of his counsel: see Standard Pennsylvania Practice, vol. 5, pp. 78, 79, §82; *Vandling v. Pittsburgh Rwys. Co.,* 64 P.L.J. 3.

On the whole, a reading of the record in this case gives one the impression that neither side was consistently concerned with bringing the proceedings to a conclusion. Apparently defendant itself did not call up its petition for a hearing until nearly 9 months after plaintiffs had filed their answer thereto, to which it may be added that the court itself did not hand down its decision thereon until more than 6 months after the hearing. While the delays of the law have long been the subject of just criticism, and while the course of the present proceedings would scarcely serve as a model of expedition, it is our opinion that, under all the circumstances revealed in the record, judgment of non pros should not—even within the broad limits of the discretionary power of the court below—have been entered.

Order and decree reversed with a procedendo.